SMART & PERRY FORD SALES, INC. & BUD DILLON *v.*
JOHN D. WEAVER, JR.

[No. 770A 117.  Filed November 9, 1971.]

*Acher and Gholston,* of Franklin, for appellants.

*Samuel J. Kagan,* of Martinsville, *Rogers & Rogers,* of Franklin, for appellee.

STATON, J.—Smart and Perry Ford Sales, Inc., and one of its salesman, Bud Dillon, are appealing from a judgment of the Johnson Circuit Court. The original action was brought by the appellee-plaintiff, John D. Weaver, Jr., to recover damages of Forty Five Hundred Dollars ($4,500.00) as the result of an alleged fraud perpetrated by Smart and Perry Ford, Inc., and its salesman, Bud Dillon. A jury returned a verdict for Two Thousand Five Hundred Dollars ($2,500.00).

Before discussing the facts in greater detail, we will make the following substitution of references to the parties in an attempt to achieve brevity, clarity and conciseness:

1. Substitute "seller"      for   Appellant-Defendant
                                  Smart & Perry Ford
                                  Sales, Inc.

2. Substitute "seller's     for   Appellant-Defendant
   salesman"                      Bud Dillon

3. Substitute "buyer"       for   Appellee-Plaintiff
                                  John D. Weaver, Jr.

The buyer entered into a contract with the seller to purchase a 1964 Ford Thunderbird on April 21, 1965. The buyer's

preliminary negotiation with the seller's-salesman included financing arrangements as well as the purchase of thirty-six (36) months fire-theft, collision and comprehensive insurance. The insurance premium of Five Hundred and Seven Dollars ($507.00) was to be incorporated in the overall financing arrangement and made a part of the buyer's monthly payment under the contract. The contract on its face clearly shows that a premium was to be paid in the amount of Five Hundred and Seven Dollars ($507.00) for thirty-six (36) months of insurance and that the premium was included in the total contract price. Thirty-six (36) monthly installments of One Hundred Thirty-Seven Dollars and Eighty-Two Cents ($137.-82) were to be made by the buyer. The buyer executed a contract for the purchase of the car and he received a policy of insurance from the Central National Insurance Group of Omaha some forty-five (45) days later. The envelope which contained the policy had imprinted on it "your policy." Without opening the envelope, the buyer placed the insurance policy in a metal box. Later, the buyer did open the envelope to examine the policy and found that the coverage afforded by it was for three hundred and forty-three (343) days instead of the thirty-six (36) months stated in the contract. The insurance premium for three hundred and forty-three (343) days of coverage was the same as the thirty-six (36) months of coverage quoted in the contract to the buyer by the seller's-salesman. The buyer confronted the seller's-salesman and office manager with the change in the terms of coverage. He was told that he should cancel the policy and purchase other insurance. Both the seller and the seller's-salesman disclaimed any responsibility for the failure of complete coverage during the period of the contract. The Buyer mailed a letter dated November 20, 1965 to the American Fletcher National Bank and Trust Company who had purchased his contract. In the letter he stated that he could not afford to purchase any additional automobile insurance and continue to meet his financial obligation under the contract. However, the buyer

did not cancel the contract but continued to make payments as provided under the terms of the contract. The automobile was totally wrecked in an accident on September 21, 1967. The buyer commenced suit against the seller, seller's-salesman and the insurance company. The complaint was in three paragraphs: Paragraph I alleged a breach of contract against all defendants; Paragraph II alleged fraud against all defendants; and, Paragraph III alleged a quasi contract against all defendants. A motion for directed verdict made by seller and seller's-salesman was granted as to Paragraphs I and III but overruled as to Paragraph II which alleged fraud. A motion for directed verdict made by the insurance company was granted as to all three legal paragraphs. The motion to correct errors cites the following:

"1. The verdict of the jury is not sustained by sufficient evidence.

"2. The verdict of the jury is contrary to law.

"3. Error of law occurring at the trial as follows:

(a) The court erred in overruling the defendants,' Smart & Perry Ford Sales, Inc., and Bud Dillon, motion made at the close of plaintiff's evidence to instruct the jury to return a verdict for the defendants.

(b) The court erred in overruling the defendants', Smart and Perry Ford Sales, Inc., and Bud Dillon, motion made at the close of all the evidence to instruct the jury to return a verdict for the defendants."

The argument to reverse the judgment relies heavily upon the sufficiency of the evidence. We cannot weigh the evidence on appeal. *Kraus* v. *Kraus* (1956), 235 Ind. 325, 132 N. E. 2d 608. The verdict of the jury will only be set aside: (1) Where the verdict is against all the evidence; (2) Where there is a total lack of evidence to sustain the verdict; and, (3) Where it is against uncontradicted evidence. 2 I.L.E., *Appeals,* § 578, page 515.

The seller and the seller's-salesman have briefed a number of legal questions coupled with evidentiary assessments. The legal questions briefed are:

1. Misrepresentation
2. Deception
3. Reliance
4. Waiver
5. Proximate Cause

and we will discuss these legal questions in the above order.

*Misrepresentation:* The representation made by the seller's salesman was that he could obtain thirty-six (36) months of insurance coverage for Five Hundred and Seven Dollars ($507.00). The term of the contract for financing the purchase of the automobile and insurance was thirty-six (36) months. He further represented that the amount of Five Hundred and Seven Dollars ($507.00) could be paid by monthly installments under the contract. The seller contends that mere expressions of opinion honestly and correctly given do not constitute actionable fraud. Whether the statements made by the seller's-salesman was a statement of fact or an opinion must first be determined. The general rule in Indiana is that what is susceptible of exact knowledge when the statement is made is usually considered to be a statement of fact. *Jenkins* v. *Long* (1862), 19 Ind. 28, 81 Am. Dec. 374; 37 Am. Jur. 2d, *Fraud and Deceit*, § 46, p. 74. In the case at bar, it would have been possible for the jury to believe that the insurability of the buyer was an ascertainable fact. The seller's-salesman testified that he had been employed by the seller as a salesman for six (6) years. He explained in his testimony that he often arranged the financing for his customers and that the automobile could not be delivered until it was insured. There was further testimony by the seller's-salesman that he acknowledged to the buyer that the bank insurance rates were high and suggested that he obtain insurance elsewhere. The rate charged was taken from a chart furnished by the financing bank which the seller's-salesman used in calculating the monthly installment payments which were to be a part of a binding written contract. From this testimony as well as other testimony given by the seller's-salesman from page 319

of the transcript to page 327 of the transcript, the jury could have believed that an ascertainable fact was being offered. However, even when the statement is one of fact, if it were an honest error and not given recklessly or carelessly, there may be no fraud. *Furnas* v. *Friday* (1885), 102 Ind. 129, 1 N. E. 296. This general rule has its limitation of application as pointed out by the court in *Furnas* v. *Friday, supra:*

> ". . . If the complaint had shown that the defendant professed to be an expert, and *that he induced the plaintiff to rely upon his superior judgment or skill,* . . . a very different case would have been presented." (Emphasis ours).

The above quotation is referring to the doctrine of constructive fraud. Constructive fraud is defined as a fraud which arises as an operation of law from statements, acts, or a course of conduct, which if sanctioned by law would secure an unconscionable advantage to the one making such statements. *Brown* v. *Brown* (1956), 235 Ind. 563, 135 N. E. 2d 614. The test to determine whether or not a constructive fraud has been perpetrated is set forth in *New* v. *Jackson* (1911), 50 Ind. App. 120, 125, 95 N. E. 328:

> " 'An unqualified statement that a fact exists, *made for the purpose of inducing another to act upon it,* implies that the person who makes it knows it to exist and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose.' " *New, supra,* 50 Ind. App. at 125.

> In *Kirkpatrick* v. *Reeves* (1889), 121 Ind. 280, 22 N. E. 139, three tests for constructive fraud were set out by the court:

1. Were the statements made to induce the plaintiff to buy?
2. Where they relied upon?
3. Did the defendant profess to possess knowledge of their truth?

The court in *Kirkpatrick, supra,* further stated:

> " 'If he states, as of his own knowledge, material facts susceptible of knowledge, which are false, it is a fraud

which renders him liable to the party who relies upon the statement as true, and it is no defense that he believed the facts to be true.'

. . .

A defendant who makes a statement of his own knowledge can not escape liability upon the ground that he acted upon trustworthy information." *Kirkpatrick, supra,* 121 Ind. at 282.

The jury could have found from the evidence that there was constructive fraud. There was evidence in the record from which the jury could have found all of the above elements present. This court will not disturb a jury verdict where there is evidence available to support it. *Metropolitan Life Insurance Co.* v. *Wolford* (1912), 49 Ind. App. 392, 97 N. E. 444.

*Deception:* The seller and the seller's-salesman contend that the buyer was not deceived because he knew of his previous bad driving record and did not disclose any of this information to the seller's-salesman prior to signing the contract. Deception of the defrauded party is an essential element of an allegation of fraud and the buyer in this case would have the burden of proving such deception. 14 I.L.E., *Fraud* § 21, p. 177. This court cannot weigh the evidence and decide whether or not it supports the contention that the buyer was deceived. The question of whether or not the buyer was deceived is, of course, a question to be decided by the jury. *Jones* v. *People's State Bank* (1904), 32 Ind. App. 119, 69 N. E. 466. In order for this court to overturn the determination made by a jury, there must be a total lack of evidence to sustain the verdict. *Bowes* v. *Lambert* (1943), 114 Ind. App. 364, 51 N. E. 2d 83. If the jury could find some evidence that the buyer had a reasonable basis for believing the statement of the seller's-salesman, who admitted himself that the statements were erroneous, then this court cannot say as a matter of law that there was no deception. The jury could have inferred from the evidence that the buyer was deceived. We find the following testimony at page 320, line 8 of the transcript which reads as follows:

"Q. Do you know the defendant or —excuse me? Do you know the plaintiff in this case, John D. Weaver, Jr.?

A. I believe I have known him all his life.

Q. And you at one time lived in Martinsville?

A. Yes.

Q. And when did you move from Martinsville?

A. Uh—September of '65—4, I'm sorry.

Q. September of '64? And when you say you have known him all his life, did you see him often and know him personally or socially or do you actually know his parents more than him?

A. Well, I was—had been acquainted with his parents for a long time but uh—we were neighbors when he was a small boy.

Q. I see. Now, you've been here and heard some testimony about the sale of an automobile to the plaintiff, Mr. Weaver? Now, when did you first enter into any type of an agreement with Mr. Weaver in regards to this automobile, this 1964 Thunderbird?

A. Did you want the date?

Q. Approximately, the date already in evidence of this contract I think April the 21st, so when did you first have any discussions or first talk to John about this automobile?

A. Do you want this in my own words?

Q. Uh Huh? Your own words.

A. I was driving the car in Martinsville when I uh—met Johnnie and we rode in and he liked it and questioned about buying it and uh—so I let him go ahead and keep the car a day or two. I don't remember how long to see whether he liked it or not. And then when he came up well that's when I quoted the price, I believe, was after he come up to the office. He wanted to know what it took to buy it or how much it would take to buy it.

Q. He tried it out a couple of days and came back and said he'd like to buy it?

A. Yes.

Q. O.K. Now, this particular car, was it a demonstrator?

A. I believe it was. It was Mr. Smart's I think it was.

Q. And was it—was there any reason it had to be sold right away or was it just one of the cars you had to sell?

A. No, we uh—use our demonstrators for a period of time or so many miles and then they go on the market to be sold.

Q. I see."

The testimony of the buyer was that he knew nothing about insurance which was uncontradicted. Even though this court may not feel that this was sufficient evidence for a finding by the jury that the buyer was deceived, we cannot invade the determination made by the jury by its general verdict. No authority has been cited by the seller or the seller's-salesman, and we can find none which would compel us to overturn the determination made by the jury.

*Reliance:* The seller and seller's-salesman further urged upon the court the argument that the buyer was not relying on the representations of the seller's-salesman at the time of his accident, since the buyer had full knowledge of his insurance status prior to that time. Reliance must occur when the fraud is perpetrated. In this instance, when the buyer was induced to buy the car. Therefore, the question of reliance in the present case would be: Was the buyer relying upon the seller's-salesman mistaken quotation of the insurance rate when he signed the contract to purchase the car? 14 I.L.E. *Fraud,* § 22, p. 179. This is a question to be decided by the jury. The jury has determined the factual question, and we cannot disturb that verdict without a clear showing that it was not supported by the evidence. The contention of the seller and seller's-salesman is not applicable to the law of reliance under the facts of this case.

*Waiver:* Another contention by the seller and the seller's-salesman is that the buyer's full knowledge of the insurance coverage, coupled with his continuation of payments toward the purchase price constituted a waiver of his right to sue. This contention is only half right. The elements of a waiver are: (1) Full knowledge of the fraud; and (2) Acts which would import an intent to confirm the transaction. *Johnson* v. *Culver* (1888), 116 Ind. 278, 19 N. E. 129. The acts which

would be necessary to confirm the transaction were set out in *Franklin Motor Car Co.* v. *Hilkert* (1925), 82 Ind. App. 513, 146 N. E. 825, as: (1) The buyer must not ask favors of the seller; (2) The buyer must not offer to perform the contract on conditions which he has no right to exact; and (3) The buyer must not make any new agreement or engagement respecting the transaction. This court stated in *Franklin Motor Car Co.* v. *Hilkert, supra:* " 'If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; . . .' " This statement is in direct conflict with the contention of the seller and seller's-salesman. They have argued that if the buyer knows of the fraud and continues on with the contract, he waives his right to sue. *Franklin Motor Car Co., supra,* holds that just the opposite must be done in order to maintain an action for damages. There is no showing that the buyer has committed any of the three acts which constitute a waiver under the *Franklin Motor Car Co., supra,* case; therefore, we cannot say as a matter of law that the buyer did in fact waive his right to damages.

The seller and seller's-salesman further urged that the delay by the buyer before bringing suit would constitute a bar to damages. This argument was answered in *Voorhees* v. *Cragun* (1916), 61 Ind. App. 690, 701, 112 N. E. 826:

> "Where, as in this case, the action is one at law to recover damages for fraud, and the situation of the parties has not changed, and the interest of no innocent third party has intervened, a defense of laches founded upon mere delay cannot avail, but the action may be prosecuted at any time within the period prescribed by the statute of limitations."

The applicable statute of limitations as found in IC 1971, 34-1-2-1, Ind. Ann. Stat., § 2-601 (Burns 1967) gives the buyer six (6) years within which to bring his action for damages. The facts in the present case show that the action for damages

was filed two and one-half (2½) years after the alleged fraud; therefore, the buyer was well within the limitations imposed by the statute.

*Proximate Cause:* This poses one of the most difficult questions: Was the buyer's damage or injury the direct and proximate result of the fraud? One of the guidelines to be considered in answering the above question is set out in *Linderman Machine Co.* v. *Hillenbrand Co.* (1921), 75 Ind. App. 111, 116, 127 N. E. 813:

> "In an action for fraud, the damages to be recovered must always be the natural and proximate consequence of the act complained of."

Proximate cause is defined in 27 I.L.E., *Torts,* § 4, p. 451, as follows:

> "In determining liability for a tortious injury, the law looks only to the act or omission from which the result follows in direct sequence without the intervention of a voluntary independent cause and declines to permit further investigation into the chain of events, and unless the act complained of is the proximate cause of the injury there is no legal liability."

The intervention of a voluntary independent cause would not operate to defeat a recovery from the wrong-doer if such intervening agency is one whose intervention would necessarily, or might reasonably, have been foreseen by the wrongdoer. *Anderson* v. *Evansville Brewing Association* (1912), 49 Ind. App. 403, 97 N. E. 445. The fact that the buyer obtained knowledge that his insurance policy would lapse prior to the accident is uncontradicted. The jury by their general verdict determined that the damage suffered by the buyer as a result of the fraud was foreseeable and found against the seller and the seller's-salesman. We cannot and will not substitute our findings of fact for those of the jury to determine this question.

The judgment should be and is hereby affirmed.

Hoffman, C.J., Sharp and White, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 718.