LESTA MARIE COFFEY AND JAMES W. COFFEY, HER HUSBAND, ESTA LAVERNE BERRY AND JAMES COFFEY, D/B/A NASHVILLE REALTY COMPANY *v.* ROY D. WININGER AND LENORE A. WININGER, HUSBAND AND WIFE.

[No. 572A224.   Filed May 15, 1973.   Rehearing denied June 25, 1973. Transfer denied October 2, 1973.]

*Frank E. Spencer,* of Indianapolis, for appellants. ..

*Robert L. Stevenson, Stevenson & Marshall,* of Columbus, for appellees.

HOFFMAN, C.J.—Plaintiffs Roy D. Wininger and Lenore A. Wininger (Wininger) were the owners of a tract of land in Brown County, Indiana, which abutted an 8.45 acre tract owned by Lesta Marie Coffey, James W. Coffey and Esta Laverne Berry (all defendants will be collectively referred to in this opinion as Coffey). These two tracts of land bordered State Road 46 near the entrance to Brown County State Park.

State Road 46 is a limited access highway. The tract of land owned by Wininger contained only field entrances onto State Road 46, but Wininger "thought that there possibly was a commercial entrance" on the property owned by Coffey. Wininger testified that his sole interest was a commercial entrance to the rest of the property. Coffey represented that the 8.45 acre tract definitely had a commercial entrance. In fact, a plat was introduced into evidence, without objection,

upon which Coffey had written "commercial entrance" with an arrow pointing to the location of the same.

In mid-January, 1967, Wininger offered Coffey $8,000 for the 8.45 acre tract. Negotiations continued until February 11, 1967, when Coffey accepted the offer of Wininger to purchase the real estate for $22,000.

After Wininger learned that the 8.45 acre tract had no commercial entrance the present cause of action was commenced. The complaint of Wininger alleged, *inter alia,* the fraudulent sale of real estate. Trial was to a jury which returned its verdict for the plaintiffs and against the defendants, and assessed plaintiffs' damages in the sum of $19,500. The motion to correct errors filed by defendants-appellants Coffey was overruled and this appeal followed.

On appeal, the first issue argued by Coffey is whether the trial court erred in admitting into evidence plaintiffs' Exhibit No. 7. Plaintiffs' Exhibit No. 7 was a letter dated July 31, 1970, purporting to be from the Seymour District Office of the Indiana State Highway Commission stating that "[t]he opening in the limited access fence on the above Project, right of station 98 + 75 provides for a field entrance and not a commerical drive." Coffey contends that the above letter was hearsay.

Clearly, Plaintiffs' Exhibit No. 7 was hearsay under the definition contained in *Trustees of Indiana University* v. *Williams, et al.* (1969), 252 Ind. 624, 631, 251 N.E.2d 439, 443, that hearsay is an out-of-court statement offered in court for the truth of the facts asserted therein. The question here is whether the letter (plaintiffs' Exhibit No. 7) is admissible under one of the exceptions to the hearsay rule.

The exception to the hearsay rule here pertinent is that public records prepared by an official pursuant to statutory command or required by the nature of the office are, if properly certified or authenticated, admissible as evidence. See: 2 Jones on Evid. (6th Ed. 1972),

§ 12:15, at 372. Such exception has been codified in Indiana in IC 1971, 34-1-17-7 (Burns Code Ed.), as follows:

"Copies of records in public offices of this state.—Exemplifications or copies of records, and records of deeds and other instruments, or of office books or parts thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office in this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his custody, and the seal of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer."

Proof of a lack of record or entry in the public record may be made as follows:

"Records or entries in public offices—Proof of lack of record.—Whenever any records or books kept in any public office of this state or any political subdivision thereof, is admissible for any purpose as evidence in any civil proceedings in any court of this state, or in any hearing or determination before any board, commission or officer of this state or any of its political subdivisions, a written statement signed by an officer or person having the custody of official records or books, or by his deputy, that after diligent search no record or entry of a specified tenor is found to exist in the records of his office, to which the seal of his office shall be annexed, if there be a seal, shall be admissible in evidence in any such civil proceeding, hearing or determination as prima facie proof of the lack of record or entry as therein specified." IC 1971, 34-3-17-1 (Burns Code Ed.)

"Records or entries in public offices—Lack of record—Other proof.—Proof of such lack of record or entry as provided in section 1 [34-3-17-1] of this act shall not prevent the proof of any such official records or books or lack of entry therein by any method authorized by an applicable statute or by the rules of evidence at common law and this statute shall be considered and construed as being supplemental thereto and as giving an additional means of proof of the lack of such entry." IC 1971, 34-3-17-2 (Burns Code Ed.).

Here, no foundation was laid for the admission of plaintiffs' Exhibit No. 7. Plaintiffs' Exhibit No. 7 was not accompanied by a proper certification that the records of the Indiana State Highway Commission had been searched. The writer of the letter was not called to testify. No proof whatsoever was offered to show the authenticity of the letter except for the signatures affixed thereon. Plaintiffs' Exhibit No. 7 was inadmissible hearsay evidence. See: 5 Wigmore on Evid. (3d Ed., 1940), § 1633(6), at 519; 30 Am. Jur. 2d, *Evidence,* § 996, at 125.

Wininger contends that any error in the admission of plaintiffs' Exhibit No. 7 was harmless under TR. 61, Ind. Rules of Proc., which provides as follows:

> "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

There is evidence in the record before us, which is entirely separate from plaintiffs' Exhibit No. 7, from which the jury could have found that no commercial entrance existed upon the property of Wininger. Roy Wininger, on direct examination, testified as follows:

"Q. Now, referring to Plaintiff's Exhibit No. 7 Mr. Wininger, had you learned earlier from the State that there was no commercial entrance to this real estate before this letter?
"A. Yes.
"Q. And was this confirmation of that?
"A. Yes.
"Q. Did you visit with the State concerning this matter?
"A. Yes.
"Q. How often or how frequently, let me ask you—you say you learned about it the first time about 4 or 5 months after you bought the land?

"A. Yes.

"Q. And you became aware that you actually didn't have a commercial entrance there?

"A. Yes."

The above quoted testimony was admitted without objection by Coffey.

The erroneous admission of inadmissible hearsay evidence will not be cause for reversal where such evidence is merely cumulative in nature. *Harter* v. *Brindle* (1969), 145 Ind. App. 411, 418, 251 N.E.2d 590, 18 Ind. Dec. 677; *Bradley* v. *Phelps* (1970), 147 Ind. App. 349, 260 N.E.2d 894, 22 Ind. Dec. 325.

Coffey next contends that the trial court erred in giving to the jury plaintiffs' Instruction No. 4, which provided as follows:

"Misrepresentation of a material fact made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party to his damage, or if made by mistake, and innocently, acted on by the opposite party, to his damage, constitutes legal fraud."

Fraud may be actual or constructive. *Budd* v. *Bd. of Co. Comrs. of St. Joseph Co.* (1939), 216 Ind. 35, 22 N.E.2d 973. Actual fraud is intentional deception. The presence or absence of the intent to deceive distinguishes actual from constructive fraud. *Daly* v. *Showers* (1937), 104 Ind. App. 480, 486, 8 N.E.2d 139 (transfer denied).

The essential elements of fraud are a material representation of past or existing facts, made with knowledge (scienter) or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying. *Middlekamp* v. *Hanewich* (1970), 147 Ind. App. 561, 263 N.E.2d 189, 23 Ind. Dec. 187. See also: *Gladis* v. *Melloh* (1971), 149 Ind. App. 466, 273 N.E.2d 767, 27 Ind. Dec. 131 (transfer denied).

Constructive fraud has been defined as "a breach of legal

or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Budd* v. *Bd. of Co. Comrs. of St. Joseph Co., supra,* at 39 of 216 Ind., at 975 of 22 N.E.2d.

*Smart & Perry Ford Sales, Inc.* v. *Weaver* (1971), 149 Ind. App. 693, 274 N.E.2d 718, contains a discussion of the application of the doctrine of constructive fraud. Judge Staton, speaking for the court, at 722 of 274 N.E.2d, relied upon the following language from *Kirkpatrick* v. *Reeves et al.* (1889), 121 Ind. 280, at 282, 22 N.E.139, at 140:

> "An unqualified statement that a fact exists, *made for the purpose of inducing another to act upon it,* implies that the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose." (Citing authorities.) (Emphasis supplied.)

In the case of actual fraud, the element of moral turpitude, *viz.,* knowledge of the falsity of the statement or reckless ignorance thereof, renders the purpose of the maker of such statement superfluous, *i.e.,* the fraud would not have been perpetrated were it not for the purpose of inducing action by the other party.

In the case of constructive fraud there need be no element of moral guilt. Mere misrepresentations will not support a finding of fraud. *Kirkpatrick* v. *Reeves, supra.* A representation made for an honest purpose even though it may turn out to be untrue does not constitute fraud unless the maker professed to be an expert or induced the other party to rely upon his superior judgment or skill or unless the fraudulent intent is shown. *Smart & Perry Ford Sales, Inc.* v. *Weaver, supra; Furnas* v. *Friday* (1885), 102 Ind. 129, 1 N.E. 296. A false statement of fact made honestly, without fraudulent intent, will not support a

finding of actual fraud. *The Watson Coal and Mining Company* v. *Casteel* (1879), 68 Ind. 476; *Automobile Underwriters, Inc.* v. *Rich* (1944), 222 Ind. 384, 53 N.E.2d 775. A false statement of fact made honestly, without fraudulent intent, will support a finding of constructive fraud only where it was made to induce reliance by the other party, and where the other party relied on the statement and was damaged thereby. *Smart & Perry Ford Sales, Inc.* v. *Weaver, supra.*

In the instant case, the following portion of plaintiffs' Instruction No. 4 is a correct statement of the law pertaining to actual fraud:

"Misrepresentation of a material fact made wilfully to deceive, or recklessly without knowledge and acted on by the opposite party to his damage * * * constitutes legal fraud."

However, the remainder of the instruction, *viz.*:

"Misrepresentation of a material fact * * * if made by mistake, and innocently, acted on by the opposite party, to his damage, constitutes legal fraud",

is susceptible to the objection interposed by Coffey that "the Instruction does not include all of the elements necessary to state a cause of action in fraud—civil fraud, * * *." The element of inducement was omitted from the latter quoted portion of plaintiffs' Instruction No. 4.

Where an instruction is not mandatory in nature, it must be considered with all of the other instructions given to the jury. *Lamb* v. *York* (1969), 252 Ind. 252, 267, 247 N.E.2d 197, 206. An erroneous instruction is not cured by the giving of a contradictory, but correct instruction. *Deckard* v. *Adams* (1965), 246 Ind. 123, 203 N.E.2d 303. However, where an instruction is not mandatory, ambiguity, inaccuracy or incompleteness of one instruction may be cured by another instruction not inconsistent therewith. *Shelby National Bank, Adm.* v. *Miller* (1970), 147 Ind. App. 203, 259 N.E.2d 450, 464, (transfer denied). The point of inquiry in determining if an erroneous instruction

is prejudicial is whether the jury was misled. *Paxton* v. *Ferrell* (1969), 144 Ind. App. 124, 244 N.E.2d 439.

In the instant case, plaintiffs' Instruction No. 4 was clearly not a mandatory instruction. See: 2 Wiltrout, Ind. Civ. Proc., § 1400(8), at 344. Therefore, we have considered all of the instructions given to the jury to determine whether the incompleteness of plaintiffs' Instruction No. 4 constitutes reversible error.

The jury was also given defendants' Instruction No. 1, which read as follows:

"In order to recover in an action for fraud, the plaintiffs have the burden of proving the following propositions:

(1) That the defendants made false statements representing them to be statements of existing fact.

(2) That the defendants made the statements, knowing them to be false, or that he made the statements recklessly, without knowledge of their truth or falsity.

(3) That the statements were made for the purpose of inducing plaintiffs to act upon them.

(4) That the plaintiffs did rely and acted upon the statements made, and

(5) That as a result plaintiffs sustained damage.

"If you find from a consideration of all the evidence that these propositions have been proved, your verdict should be for the plaintiffs. However, if you find from a consideration of all the evidence that any of these propositions have not been proved, your verdict should be for the defendants."

Both instructions having been given, the jury could not have been misled by the incompleteness of plaintiffs' Instruction No. 4.

Coffey contends that the verdict of the jury is not supported by sufficient evidence in the following specifics:

(a) there is no evidence that Coffey had intent to defraud Wininger.

(b) there is no evidence that Coffey knew the representation in respect to the commercial entrance to be false and such representation was made with intent to deceive Wininger for the purpose of inducing Wininger to act.

(c) there is no evidence that Coffey knew the representation

that he owned a parcel of adjacent real estate was false, and that such representation was made with intent to deceive Wininger and induce Wininger to act.

(d) there was no evidence that Wininger was induced to purchase the real estate in question by the representations of Coffey that a commercial entrance existed thereon.

(e) there is no evidence that Wininger paid the sum of $22,000 to Coffey.

(f) there is no evidence that Coffey knew the entrance could not be used as a commercial entrance.

(g) there is no evidence that the entrance to the real estate in question could not be used as a commercial entrance.

(h) there is no evidence that Coffey represented to Wininger that the property had a commercial entrance as described in plaintiffs' complaint.

(i) there is no evidence that Coffey sought to sell the real estate in question.

With regard to specifics (a), (b) and (c), the jury, under the evidence contained in the record before us, might have based its verdict upon the doctrine of constructive fraud. As hereinabove stated, constructive fraud is not based upon a specific intent to defraud.

With regard to specific (d), Wininger testified that his "sole interest" in the 8.45 acre tract was to obtain a commercial entrance to the remainder of his property. From such testimony, along with the remainder of the evidence contained in the record before us, the jury could infer that the element of inducement was present.

We find no relevance in specific (e). The contract price was $22,000. Wininger is obligated under the contract for such amount. Whether payment has been made is not here controlling.

As to specifics (f) and (g), the alleged fraud sued upon by Wininger was that Coffey represented the property to have a commercial entrance. The question of whether the property could be granted a commercial entrance might be relevant to

the issue of damages, but in such case the burden would be upon Coffey to prove that the property is eligible for a commercial entrance.

The following testimony of Roy Wininger, on cross-examination, is particularly pertinent to specific (h):

"Q. All right. Now, you have made your statement. Now, will you answer my question, please, sir? My question to you was that did anyone at any time tell you that you had a commercial entrance as you described in your complaint that it was a commercial entrance in accordance with a statement or publication or whatever it is of the State Highway Commission of Indiana, dated July, 1965, Sheet MHI commercial entrance? Did Mr. Coffey tell you this?

"A. He didn't use those words. He said it was an official commercial entrance granted to the State of Indiana, and I assumed it would be in accordance with that specification."

The weight to be given to the above quoted testimony was for the jury.

With regard to specific (i), the evidence in the record before us is uncontroverted that negotiations began with an offer of $8,000 and ended with an acceptance of an offer of $22,000. Obviously, there was a sale of the real estate.

Coffey finally contends that the damages awarded by the jury were excessive. In conjunction with such contention Coffey argues that the trial court erred in overruling his "Motion to Weigh the Evidence." While we find no authority recognizing a "Motion to Weigh the Evidence", we find that the purpose which such motion was intended to serve in the instant case was duplicated by the timely motion to correct errors which was filed by Coffey. See: *Borowski* v. *Rupert* (1972), 152 Ind. App. 9, 281 N.E.2d 502, 30 Ind. Dec. 435, (transfer denied).

TR. 59(E), Ind. Rules of Civ. Proc., is here controlling and provides, in pertinent part, as follows:

"(E) Relief granted on motion to correct errors. The court, if it determines that prejudicial or harmful error

has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the issues:

* * *

(5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur; * * *."

The contract price for the sale of the land was $22,000. One witness testified that the land without a commercial entrance was worth $3,500. Another witness testified that the land was worth $500 per acre (8.45 acres multipled by $500 per acre is $4,225 for the entire tract). There is no evidence, nor is there evidence leading to the inference that the entire tract was worth only $2,500. Thus, the verdict of the jury in the amount of $19,500 was excessive as a matter of law.

Therefore, a remittitur of $1,000 by appellees to appellants is hereby ordered. If such remittitur is filed within thirty days after the date that this opinion is certified to the trial court by the clerk of this court in accordance with AP. 15, Ind. Rules of Procedure, the judgment of the trial court as so remitted is affirmed; otherwise, such judgment is reversed with instructions to grant appellants a new trial on the issue of damages.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 296 N.E.2d 154.