Mary Sue **PLOHG,** As Guardian of John W. Plohg, An Adult, Appellant/Counterclaimant,

v.

**NN INVESTORS LIFE INSURANCE COMPANY, INC.,** An Iowa Corporation, Appellee/Counterdefendant.

No. 45A03–9001–CV–4.

Court of Appeals of Indiana, Third District.

Jan. 16, 1992.

Harry J. Jennings, Theresa L. Springmann, Stanley L. Pondo, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellant/counterclaimant.

J. Robert Geiman, David J. Novotny, Douglas J. Varga, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Robert F. Parker, Randall J. Nye, Beckman, Kelly & Smith, Hammond, for appellee/counterdefendant.

GARRARD, Judge.

In 1983 John and Mary Sue Plohg owned a tavern. They purchased a group health insurance plan from N.N. Investors Life Insurance Company, Inc. Then on December 7, 1984 John was seriously injured in an automobile accident. The Plohgs attempted to collect on the health insurance for their medical expenses, but after its investigation of the accident the insurance company declined to pay. It contended that because John's accident was caused by his intoxication the company had no liability. It relied upon the following provision contained in the policy issued to the Plohgs:

> INTOXICANTS AND NARCOTICS: The Company shall not be liable for any loss sustained or contracted in consequence of the Insured Person being intoxicated or under the influence of any narcotic unless administered on the advice of a physician.

The company commenced an action for declaratory judgment, and the Plohgs counterclaimed asserting fraud and seeking both compensatory and exemplary damages. The case was tried by jury and a verdict was returned for Plohgs. After finding the company entitled to set off the amount of settlements made with other parties prior to trial, the court entered judgment for the Plohgs in the amount of $92,270.

The Plohgs appeal contending that the court erred by granting judgment on the evidence against them on their claim for punitive damages. The company cross-appeals contending the claim for compensatory damages should not have gone to the jury and, also, that there was error in the final instructions and in the exclusion of certain evidence. Additionally, the company contends a mistrial should have been ordered because of remarks made by Plohgs' counsel in final argument.

Both Plohgs' claim that punitive damages should have been submitted to the jury and the company's claim that not even compensatory damages should have gone to the jury require our review from the perspective of the evidence most favorable to the Plohgs. That evidence disclosed that on February 3, 1983, Geoffrey Cutler, an

insurance agent for N N Investors met with John and Mary Sue Plohg to discuss a policy of group health insurance offered by N N. The Plohgs were interested because the premium on their existing policy with Prudential Insurance Company had increased substantially. Mr. Cutler advised the Plohgs that the N N Investors policy was as good or better than the Prudential policy and carried a lower premium rate. The Plohgs asked about exclusions contained in the policy, and Cutler showed Mrs. Plohg an exclusions page in the sample policy. It listed war injuries, pregnancy and other normal exclusions. Plohgs asked if these were the only exclusions, and Cutler responded that they were. During the entire conversation Plohgs made no inquiry specifically concerning alcohol usage and coverage under the policy, and Cutler made no representations specifically about alcohol usage and coverage. As a result of the meeting Plohgs applied for the N N Investors policy and paid the initial premium. When they subsequently received the policy, they reviewed the exclusions page to verify that it was the same as that shown them by Cutler. They did not, however, examine the rest of the policy so they did not see the intoxicants provision at issue in this lawsuit.

■ In order to recover on their claim for punitive damages it was necessary for the Plohgs to establish by clear and convincing evidence that the conduct of N N's agent was not merely negligence or other noniniquitous human failure. *Traveler's Indemnity Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349. The evidence failed to meet that standard, and the court properly entered judgment on the evidence on the issue of punitive damages. There was no express discussion, inquiry or representations concerning the policy's application to an intoxicated insured. Under the evidence it is entirely possible that agent Cutler simply did not think of the provision in question here when he was asked about exclusions. He simply turned to the exclusions page in the policy and reviewed its

contents with the Plohgs. Any finding of the scienter necessary to sustain punitive damages on the evidence presented would necessarily have been based on speculation. The question was, therefore, properly removed from the jury's consideration.

■ On the other hand such proof of scienter was not necessary to the Plohgs' claim for compensatory damages. Constructive fraud permits recovery in the absence of proof of fraudulent intent. As the court stated in *Smart & Perry Ford Sales, Inc. v. Weaver* (1971) 149 Ind.App. 693, 274 N.E.2d 718, 724, quoting from *New v. Jackson* (1911) 50 Ind.App. 120, 95 N.E. 328:

> An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces the other to act upon his statement, the law will impute to him a fraudulent purpose.

■ While the older cases tended to limit constructive fraud to instances where a confidential or fiduciary relationship existed between the parties (and this remains the rule where the claim is based upon a party's failure to speak) the more recent decisions permit an action for constructive fraud based upon the positive affirmations made by a seller to a potential purchaser where no other relationship exists between the parties. *See, e.g. Whiteco Properties, Inc. v. Thielbar* (1984) Ind.App., 467 N.E.2d 433; *Coffey v. Wininger* (1973) 156 Ind.App. 233, 296 N.E.2d 154; *Smart & Perry Ford Sales, supra.* In this case the representation by agent Cutler that the exclusions he showed the Plohgs were the only exclusions contained in the policy was sufficient to create a basis for constructive fraud.

The insurance company argues that representations made by an insurance agent may ground an action only if the prospective insured brings a particular risk to the

agents attention and secures a specific representation of coverage. The gist of the cases relied on by the company is the requirement that there be a misrepresentation of fact. Cutler's review of the exclusions page with the Plohgs coupled with his assertion that there were no other exclusions satisfies the requirement.

█ The testimony was that Plohgs relied upon Cutler's representations. The remaining question is whether in the exercise of reasonable care they were entitled to rely upon them. The traditional rule has been that reliance is not justified where the injured party has a written instrument available and fails or neglects to read it. *Robinson v. Glass* (1883) 94 Ind. 211. On the other hand, we have come to recognize that in the modern world ordinary, i.e. reasonable, care does not necessarily require a person to read something as complex as today's insurance policies. Rather, whether a party's reliance upon an agent's representations is reasonable even though he failed to exercise the opportunity to read the policy is a question of fact for the factfinder. *Medtech Corp. v. Indiana Ins. Co.* (1990) Ind.App., 555 N.E.2d 844, 850 (trf. den.).

█ Finally on the question of sufficiency, the company urges that Plohgs failed to establish that they suffered any detriment. It argues that Plohgs' theory was that had they not purchased the N N policy, their Prudential policy would have paid the reasonable and necessary medical expenses arising from the accident. It asserts that Plohgs failed to introduce any evidence that this was true. The argument seeks to have us reweigh the evidence by choosing a different inference than that taken by the jury. The Prudential agent called by Plohgs testified that there was no such intoxication provision in the Prudential policy and gave sufficient further testimony to permit the jury to infer that Plohgs' reasonable and necessary expenses would have been paid under that policy.

The evidence was sufficient to withstand N N's motion for judgment on the evidence and to sustain the verdict.

N N raises seven additional contentions of cross-error, none of which we find availing.

It contends that the court erred in refusing two of its tendered instructions which would have told the jury that it could not be liable unless its agent made a false specific representation about a specific risk and in giving an instruction on constructive fraud. For the reasons already stated the two tendered instructions were not a correct statement of the law and were properly refused. Also, for the reason already considered it was proper to instruct on constructive fraud although agent Cutler did not have a confidential or fiduciary relationship with the Plohgs.

█ N N contends the court also erred in its damages instruction by permitting the jury to consider John's mental anguish and suffering because there was no evidence of any such damage arising from its refusal to honor the claim. Plohg's brother Tim was permitted to testify to his opinion that because N N did not pay the medical expense claim for four-and-a-half years the Plohgs were traumatized; they were totally devastated. We think this evidence was sufficient to permit the jury to be instructed on Plohgs' theory of the case.

█ Similarly, N N asserts the court erred in instructing the jury concerning past and future medical expenses. Again the premise for the argument is its view of the evidence, that is to say, it views the evidence and the inferences therefrom from the perspective favorable to it. The Prudential policy was introduced in evidence along with the testimony of the Prudential agent already referred to. Plohgs' witness, Dr. Kaufman, testified that the bills were reasonable, customary and necessary. He also testified that John Plohg would continue to need physical therapy, psychotherapy and, probably, occupational therapy. While he could not put a precise term or dollar figure on such expenses, he did state that in his opinion many years would be involved and while the expense

would not be a thousand dollars a day, it would likely run to several hundred dollars per month. That evidence, along with the Plohgs' medical expenses which were introduced, was sufficient to permit the jury to consider the past and future medical expense. *See, Nahmias Realty, Inc. v. Cohen* (1985) Ind.App., 484 N.E.2d 617 (mathematical certainty not necessary; doubts resolved against wrongdoer).

■ N N next contends that the court abused its discretion in excluding from evidence an exhibit it offered and the testimony of agent Cutler. We find no abuse of discretion in either instance. The exhibit, a form statement containing a disclaimer prepared by the company and apparently signed by John Plohg was not produced by N N during discovery, although within a discovery request to it to produce at the deposition of the supervising claim manager of N N all files and documents related to the Plohgs' application and claims for insurance. Furthermore it was not listed by it as an exhibit in the proposed pretrial order. Although this order was not entered by the court, it was referred to by the court as settling the authenticity of the exhibits to be used at trial. N N argues that the exhibit was never requested because it was part of the underwriting file rather than the claim file. In ruling on the objection the judge noted that the document, which asserted that the company would not be bound by any representations made by its agent unless specifically set forth on the application, went to the heart of the dispute and it was inconceivable that Plohgs had never been confronted with it during the entire five year period unless the company intended to ambush them. Nothing in the record suggests that N N was either unaware of the document or could not locate it until the eleventh hour and then made an effort to disclose it promptly to Plohgs or the court. Under the circumstances we certainly cannot say the ruling was clearly against the logic and effect of the circumstances. Thus, no abuse of discretion has been shown.

■ As to Mr. Cutler the discovery record discloses that he had left the company's employ and they did not know his whereabouts. He was not listed as a witness for trial on the proposed pretrial order signed by N N's counsel. However, N N apparently located him shortly before trial, but he was beyond the subpoena power of the court. N N attempted to arrange his attendance and brought to the court's attention during trial that it wished to call Cutler as a witness. Plohgs objected on the ground that they would have no opportunity to prepare for cross-examination since they had no prior opportunity to depose him and N N represented that he would be available for a limited time. The court initially indicated it would permit Cutler to testify and Plohgs might examine him before he took the stand. Subsequently, N N advised the court and Plohgs that Cutler would be available only during the afternoon hours on Wednesday afternoon and could not remain to testify on Thursday. After listening to counsel the court concluded that there was little basis to believe that Mr. Cutler would be there in sufficient time to permit him to be deposed and then thereafter present his evidence to the jury. The judge additionally observed that trying to keep the jury over for the benefit of one person would be very unfair to them. The court then determined to exclude the testimony.

We do not dispute that due to the apparent potential significance of the testimony of this particular witness—to one party or the other—the issue is a close one. The trial judge expressly recognized this. On the other hand, we need not determine whether the court reached the "right" answer, or whether another alternative might have been better. That is the point of affording the court discretion in this sort of ruling. The law provides no official "right" answer; rather, it affords the judge latitude, and our appellate second-sight will not reverse unless we are persuaded that the judge's decision was clearly against the logic and effect of the circumstances before the court. *Eyler v. Ey-*

*ler* (1986) Ind., 492 N.E.2d 1071, 1075 (Can the evidence before the court serve as a rational basis for its decision?) Moreover, the burden to establish an abuse rests with N N. *Wells v. Gibson Coal Co.* (1976) 170 Ind.App. 445, 352 N.E.2d 838. N N has failed in that burden since it fairly appears that Cutler was not listed as an expected witness and his apparent availability was such that Plohgs would have had no opportunity to examine him prior to his testimony. Either he could have testified without their having the opportunity to first examine him, or, as their counsel urged was likely, they would have been permitted to take his discovery deposition and then N N would have sought to introduce the deposition because he was no longer available. N N urges that it was improper for the court to consider unfairness to the jury in the possibility of keeping them in session beyond the normal time for adjournment, but without any information concerning the needs or commitments of this particular jury or reasonable estimation of how long they might have been required to stay, we cannot agree. Perhaps there was some better alternative, but N N has not shown it or that the court's decision was an abuse of discretion. Neither has it shown how it was prejudiced by the court's ruling since it has made no proffer to us concerning what Mr. Cutler would have testified to had he been called. *See, Wells, supra.*

 Finally, N N asserts that the court erred by failing to admonish the jury or declare a mistrial because of the remarks by Plohgs' counsel during final argument. In the first instance counsel assertedly referred to an exhibit which had been excluded. N N objected and counsel acquiesced in the court's ruling stating that it was not his recollection. No request for admonishment or mistrial was made so no error upon those grounds may be pursued.

In the second instance counsel attributed fraudulent purposes to N N. Counsel objected and then moved for a mistrial. The court denied the motion for mistrial but granted a curative instruction. N N has failed to demonstrate why this was not sufficient, the law presumes that it was. *See, e.g., New York C.R. Co. v. Milhiser* (1952) 231 Ind. 180, 106 N.E.2d 453.

The judgment is affirmed.

HOFFMAN, P.J., and STATON, J., concur.