

FILED

Dec 15 2015, 7:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Karl L. Mulvaney
Joshua J. Burress
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

Laura Richards Sherry
The Harris Firm
Dallas, Texas

ATTORNEYS FOR APPELLEE STEVE
DYBWAD

Brian P. Nally
Martin T. Galvin
Reminger Co., L.P.A.
Cleveland, Ohio

ATTORNEYS FOR APPELLEES CRONIN
INSURANCE SERVICES, INC., AND THE
ASSOCIATION OF SMALL, CLOSELY-
HELD BUSINESS ENTERPRISES

Connie M. Anderson
Lewis Brisbois Bisgaard & Smith LLP
Los Angeles, California

Kari H. Halbrook
Lewis Brisbois Bisgaard & Smith LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEE
GREENWALT CPAS, INC., F/K/A
GREENWALT SPONSEL & CO.

Michael E. Brown
Crystal G. Rowe
Kightlinger & Gray, LLP
Indianapolis, Indiana

Thomas F. Falkenberg
Williams, Montgomery & John
Chicago, Illinois

ATTORNEYS FOR APPELLEE JONIGIAN
& FOX, INC., D/B/A FOX & FOX

Scott B. Cockrum
Patrick Devine
Hinshaw & Culbertson LLP
Schererville, Indiana

James Harbert
Hinshaw & Culbertson LLP
Chicago, Illinois

ATTORNEY FOR APPELLEE MARK
LIGHT

Paul D. Vink
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
WASHINGTON TRUST BANK

Michael A. Maurer, *pro hac vice*
Lukins & Annis, P.S.
Spokane, Washington

Steven E. Runyan
Kroger Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE WESTERN
RESERVE LIFE ASSURANCE CO. OF
OHIO

John R. Carr, III
Michael R. Franceschini
Thomas B. Bricker
Ayers Carr & Sullivan, P.C.
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Seema Kapoor; Shiv Kapoor; Performance Support Consulting, LLC; Matt Judson; and Regional Construction Services, Inc., | December 15, 2015 |
| | Court of Appeals Cause No. 49A04-1410-CT-492 |
| *Appellants/Plaintiffs,* | Appeal from the Marion Superior Court |
| v. | The Honorable John F. Hanley, Judge |
| | Cause No. 49D11-1309-CT-35196 |

Steve Dybwad; Cronin Insurance Services, Inc.; Mark Light; Greenwalt CPAs, Inc., f/k/a Greenwalt Sponsel & Co.; Association of Small, Closely-Held Business Enterprises; Washington Trust Bank; Jonigian & Fox, Inc., d/b/a Fox & Fox; and Western Reserve Life Assurance Co. of Ohio,

*Appellees/Defendants.*

**Bradford, Judge.**

# Case Summary[1]

Appellants/Plaintiffs Seema Kapoor; Shiv Kapoor; Performance Consulting; LLC (collectively, "the Kapoor Plaintiffs"); Matt Judson; and Regional Construction Services, Inc. (collectively, "the Judson Plaintiffs"), appeal from the trial court's grant of a motion to dismiss in favor of Appellees/Defendants Steve Dybwad; Cronin Insurance Services, Inc.("CIS"); Mark Light; Greenwalt CPAs, Inc., f/k/a Greenwalt Sponsel & Co. ("Greenwalt"); Association of Small, Closely-Held Business Enterprises ("ASBE"); Washington Trust Bank ("WTB"); Jonigian & Fox, Inc., d/b/a Fox & Fox ("Fox & Fox"); and

---

[1] We held oral argument in this case on November 5, 2015. We would like to commend counsel for the high quality of their preparation and oral advocacy.

Western Reserve Life Assurance Co. of Ohio ("WRL"). Defendants fulfilled various roles in assisting Plaintiffs to establish welfare benefit programs for the employees of their companies, programs which involved the purchase of cash value life insurance policies. These plans were initially known as the Cronin Insured Secured Program ("Cronin ISP Plan") and, later, the Cronin Group Term Life Insurance Program ("Cronin GTLP Plan"). For several years, Plaintiffs made premium payments and deducted the contributions on their tax returns.

[2] In 2012 and 2013, the Plaintiffs received deficiency notices from the IRS, indicating that it had disallowed the deductions taken for contributions to the Cronin ISP and GTLP Plans. As a result, Plaintiffs incurred costs for back taxes, penalties, and interest. All Defendants were sued by various Plaintiffs (the Kapoor Plaintiffs, the Judson Plaintiffs, or all Plaintiffs) for fraud, fraud by omission, negligent misrepresentation, negligence, unjust enrichment, money had and received, and constructive fraud. The trial court granted Defendants' motion to dismiss for failure to state a claim under which relief may be granted.

[3] On appeal, Plaintiffs argue that (1) Defendants' alleged misrepresentations are actionable as a matter of law, (2) Plaintiffs' fraud allegations were pled with requisite specificity, (3) Defendants had a duty to Plaintiffs, (4) the economic loss doctrine does not bar their negligence claim against Fox & Fox, (5) Plaintiffs were not required to attach certain "writings" in order to sustain a cause of action against Fox & Fox, (6) the trial court erred in dismissing the

Judson Plaintiffs' fraud claim against WRL, and (7) the trial court erred in dismissing the Judson Plaintiffs' negligence claim against Greenwalt.

[4] CIS and ASBE contend that (1) Plaintiffs do not have a viable cause of action because it is inherently unreasonable to rely on predictions regarding future tax consequences and (2) Plaintiffs' fraud claims were not pled with sufficient specificity. Greenwalt argues that the Judson Plaintiffs' (1) negligence claims against them are time-barred, (2) fraud claims were not pled with sufficient specificity, and (3) the constructive fraud claim did not allege the necessary unconscionable advantage. Fox & Fox contends that (1) allegations of fraud against it fail to state a claim, (2) fraud claims were not pled with sufficient specificity, (3) the constructive fraud claim was properly dismissed due to a lack of duty, and (4) the negligence claim was properly dismissed pursuant to the economic loss doctrine and for a lack of duty. WTB contends that (1) Washington state law governs its relationships with various Plaintiffs, (2) it had no legal duty to provide tax or financial advice to Plaintiffs and (3) any claims based on a breach of duty must therefore fail. WRL contends that (1) the Judson Plaintiffs' fraud allegations were not pled with sufficient specificity and (2) the Judson Plaintiffs pled no facts supporting a material misrepresentation. Light contends that all of the Judson Plaintiffs' claims against him fail as a matter of law. Because we conclude that the trial court erred in dismissing several fraud, constructive fraud, and negligence claims against various defendants, we reverse the judgment of the trial court in part and remand for further proceedings.

# Facts and Procedural History

## I. Background—Section 419(e) Plans

Generally, Title 26, Section 419 of the United States Code provides for the establishment of "welfare benefit funds" by employers for employees, with employer contributions deductible under certain circumstances. Section 419(e) defines the term "welfare benefit fund" as "any fund … which is part of a plan of an employer, and … through which the employer provides welfare benefits to employees or their beneficiaries." "The amount of the deduction allowable … for any taxable year shall not exceed the welfare benefit fund's qualified cost for the taxable year." 26 U.S.C § 419(b).

As far back as 1995, the Internal Revenue Service announced its position concerning some arrangements purporting to comply with Section 419, stating that such arrangements involving welfare benefit funds that invested in variable life or universal life insurance contracts on the lives of the employees did not provide the deductions claimed by their promoters. The IRS, *inter alia*, took the position that arrangements that invested in variable life for universal life

contracts may actually be providing deferred compensation, which would not provide for the same tax-deduction opportunities for the employer.[2]

[7] In late 2007, the IRS issued Notices 2007-83 and 2007-84 and Revenue Ruling 2007-65. Notice 2007-83 was entitled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits" and informed taxpayers that "the tax benefits claimed for these arrangements are not allowable for federal tax purposes." Appellant's App. p. 926. Notice 2007-83 also indicated that the IRS intended to challenge the claimed tax benefits related to premiums for cash value life insurance policies. *Inter alia*, Notice 2007-84 indicated the IRS's intention to challenge "purported welfare plans that, in form, provide post-retirement medical and life insurance to employees on a non-discriminatory basis, but that, in operation, will primarily benefit the owners or other key employees of the businesses." Appellant's App. p. 934. Revenue Ruling 2007-65 indicated that "if the benefit provided through the fund is life insurance coverage, premiums paid on cash value life insurance policies by the fund are not included in the fund's qualified direct cost whenever

---

[2] Title 26, Section 162 of the United States Code limits business deductions to expenses that are ordinary and necessary. The deductibility of life insurance expenses has been interpreted to be limited to the cost of term life insurance acquired for a legitimate business reason. *See, e.g.*, *V.R. Deangelis M.D.P.C. v. C.I.R.,* 94 T.C.M. (CCH) 526 (T.C. 2007) ("While employers are not generally prohibited from funding term life insurance for their employees and deducting the premiums on that insurance as a business expense under section 162(a), employees are not allowed to disguise their investments in life insurance as deductible benefit-plan expenses when those investments accumulate cash value for the employees personally.").

the fund is directly or indirectly a beneficiary under the policy" and are therefore not deductible. Appellant's App. p. 950.

## II.  The Defendants

[8] Lawrence Cronin was an insurance broker who operated CIS. Cronin developed the Cronin ISP Plan and, later, the Cronin GTLP Plan. The Cronin ISP Plan was purportedly set up in compliance with Section 419(e), while the Cronin GTLP Plan was purportedly set up in compliance with U.S. Tax Code Sections 79 and 83. All Plaintiffs bring claims against CIS.

[9] Fox & Fox operated as a third-party administrator of the Cronin ISP and GTLP Plans. Fox & Fox collected money from the Plaintiffs for investment in the Plans and administrative fees, and their invoices instructed the Plaintiffs regarding how much money to deduct as "qualified costs" on their tax returns. All Plaintiffs bring claims against Fox & Fox.

[10] WTB was trustee for the Cronin ISP Plans. WTB acquired a security interest in each policy's proceeds and required covered employees to execute assignments. WTB became the beneficiary of the policies and, in the event of a covered employee's death, collected policy proceeds and disburse them pursuant to Cronin ISP documents. WTB collected money from Plaintiffs, which it then used to pay the premiums for the policies on the lives of the Plaintiffs. WTB received administrative fees for its role in administering the Cronin ISP Plans. All Plaintiffs bring claims against WTB.

ASBE, successor to the Science and Technology Council of Maryland ("SATCOM"), purportedly acted as "trustee" for the Cronin GTLP Plans. ASBE collected money from plan participants, deposited that money into its bank accounts, and then made payments to the various insurance providers for the premiums on the life insurance policies. ASBE received payment for these services. All Plaintiffs bring claims against ASBE.

WRL devised the insurance policies to be used in the Judson Plaintiffs' plans. WRL provided its agents, including Cronin and Light, with illustrations and other marketing materials. WRL paid Cronin and Light commissions. Only the Judson Plaintiffs bring claims against WRL.

Dybwad was the Kapoor Plaintiffs' financial and insurance advisor who had serviced their needs since 1999. Only the Kapoor Plaintiffs bring claims against Dybwad.

Light was the Judson Plaintiffs' financial advisor who had served in that capacity since 2002. During the third quarter of 2008, the Judson Plaintiffs retained Greenwalt as their financial and tax advisor. Greenwalt provided tax advice to the Judson Plaintiffs from 2008 through 2012. Only the Judson Plaintiffs bring claims against Light and Greenwalt.

## III. The GTLP Plan

In December of 2007, Cronin created the Cronin GTLP Plan, which he marketed as a Section 79/83 plan. Although the Cronin GTLP Plan purports not to be a welfare benefit plan pursuant to Section 419(e), the language of the

plan document is "virtually identical" to that of the Cronin ISP plan document. Appellant's App. p. 973. One of the few differences between the Cronin ISP Plan and the Cronin GTLP Plan is that the word "Trust" in the former has been replaced with "Association" in the latter. Appellant's App. p. 973. Shortly after the publication of IRS Notice 2007-83, approximately 139 employees covered by the Cronin ISP Plan were rolled over into the Cronin GTLP Plan.

## IV. The Kapoor Plaintiffs

[16] Seema and Shiv Kapoor operate Performance Support Consulting, LLC, in Indiana. In late 2006, Dybwad approached the Kapoor Plaintiffs to solicit their participation in the Cronin ISP Plan. Dybwad told the Kapoors that the Cronin ISP Plan was an IRS-approved plan that would provide more insurance for them and allow them to take a full deduction for their contributions. Dybwad also represented to the Kapoors that the Cronin ISP Plan had a guaranteed rate of return of between 5% and 15%, their principal investment would be protected, the plan was a legitimate retirement plan, and they could access their money at any time through tax-free loans.

[17] The Kapoor Plaintiffs invested $100,000.00 in the Cronin ISP Plan in 2006 and took the corresponding tax deduction. In 2007, after the IRS issued its notices regarding Section 419(e) plans, Dybwad, in conjunction with Fox & Fox, transferred the Kapoor Plaintiffs to the Cronin GTLP Plan. Dybwad allegedly told the Kapoors that there had been changes in IRS regulations and that the

transfer was necessary to ensure compliance. Dybwad allegedly also told the Kapoors that contributions to the Cronin GTLP Plan were tax-deductible, they would see a guaranteed return on their investment, and they would still have access to loans from the policies. The Kapoors made further investments in 2007, 2008, 2009, 2010, and 2011 of $100,000.00 per year in the Cronin GTLP Plan, taking the corresponding tax deductions for every year except 2011.

[18] On May 18, 2012, the Kapoors received a deficiency notice from the IRS, in which the IRS notified the Kapoor Plaintiffs that it had disallowed the tax deductions they had taken for contributions to the Cronin ISP and GTLP Plans. After negotiations with the IRS, the Kapoor Plaintiffs agreed to pay back taxes of $75,715.27, accuracy-related penalties of $24,073.67, and interest of $9623.84 for 2007-2010. Additionally, the IRS assessed 6707A penalties against the Kapoors individually of $41,232.00 and against Performance Support of $40,000.00. The Kapoor Plaintiffs bring claims against CIS, ASBE, Dybwad, WTB, and Fox & Fox.

## V. The Judson Plaintiffs

[19] Judson is presumably married to Jackie Judson and operates Regional Construction Services, Inc. ("RCS"), incorporated in Indiana in April of 2002. In 2002, the Judson Plaintiffs engaged Light to be their financial advisor. In October or November of 2004, Light approached the Judson Plaintiffs to solicit their participation in the Cronin ISP Plan. Light allegedly told the Judson Plaintiffs that the Cronin ISP Plan was designed to benefit RCS's long-term

employees and help retain them. As part of the Cronin ISP Plan, the Judson Plaintiffs deposited money into an "escrow account" to be used to pay the annual insurance premiums. Appellant's App. 861. Light allegedly told the Judson Plaintiffs that the Cronin ISP Plan was in full compliance with IRS regulations, the plan allowed investors to take a full deduction, their principal investment was protected, and they could access the money after a few years via tax-free loans.

[20] On December 21, 2004, the Judson Plaintiffs made a $30,000.00 contribution to the Cronin ISP Plan, a contribution amount repeated in 2005 and 2006. From 2004 to 2006, the Judson Plaintiffs paid $8750.00 in administrative costs.

[21] In November of 2006, Light approached the Judson Plaintiffs about amending the Cronin ISP Plan. After Light allegedly told the Judson Plaintiffs that they would need to obtain a second life insurance policy on Matt Judson, the Judson Plaintiffs contributed an additional $30,000.00 in 2006. Also in December of 2006, the Judson Plaintiffs contributed $310,000.00 to WTB to be held in the escrow account. Also in 2006, the Judson Plaintiffs paid $2075.00 in administrative costs.

[22] In October of 2008, Light contacted the Judson Plaintiffs to discuss their Cronin ISP Plan, allegedly telling them that they needed to transfer to the Cronin GTLP Plan. Light allegedly told the Judson Plaintiffs that the Cronin GTLP Plan was IRS-approved, they could take deductions for their contributions, and they would still see a guaranteed return on their investment. The Judson

Plaintiffs paid a $300.00 termination fee to WTB and made contributions to the Cronin GTLP of $60,000.00 in 2008 and $27,000.00 in each of 2009, 2010, and 2011 and paid approximately $4625.00 in administrative costs to ASBE and Fox & Fox.

In March of 2013, the Judson Plaintiffs received a deficiency notice from the IRS. The IRS had determined that the Cronin ISP and GTLP Plans were noncompliant and that the Judson Plaintiffs were not entitled to take deductions equal to the amount of their contributions. The Judson Plaintiffs have been assessed the following: back taxes of $254,963.00, accuracy-related penalties of $84,480.38, interest of $42,085.22, and 6707A penalties of $30,000.00 against RCS and $60,624.00 against the Judson Plaintiffs individually. The Judson Plaintiffs bring claims against CIS, Light, Greenwalt, ASBE, WTB, and Fox & Fox.

## VI. Procedural History

On September 13, 2013, the Plaintiffs filed their original complaint for damages. Plaintiffs sued Defendants for fraud, fraud by omission, negligent misrepresentation, negligence, unjust enrichment, money had and received, and constructive fraud. Defendants filed motions to dismiss pursuant to Indiana Trial Rule 12(B)(6), which motions the trial court granted on March 18, 2014. On March 28, 2014, Plaintiffs filed their first amended complaint ("FAC"). All defendants were sued by various Plaintiffs (the Kapoor Plaintiffs, the Judson Plaintiffs, or all Plaintiffs) for fraud, fraud by omission, negligent

misrepresentation, negligence, unjust enrichment, money had and received, and constructive fraud.

[25] Defendants Dybwad, ASBE, Greenwalt, WTB, Light, Fox & Fox and WRL again filed motions to dismiss Plaintiffs FAC pursuant to Trial Rules 12(B)(6) and 9(B). On August 26, 2014, after hearing argument on Defendants' motions to dismiss, the trial court granted the various motions without elaboration. On September 24, 2014, the trial court ordered that its order granting Defendants' motions to dismiss be made final and appealable.

## VII. Claims on Appeal

[26] Plaintiffs contend that the trial court erred in granting Defendants' motion to dismiss. Specifically, Plaintiffs argue that (1) Defendants' alleged misrepresentations are actionable as a matter of law, (2) Plaintiffs' fraud allegations were pled with the requisite specificity, (3) Defendants had a duty to Plaintiffs, (4) the economic loss doctrine does not bar its negligence claim against Fox & Fox, (5) Plaintiffs were not required to attach certain "writings" in order to sustain a cause of action against Fox & Fox, (6) the trial court erred in dismissing the Judson Plaintiffs' fraud claim against WRL, and (7) the trial court erred in dismissing the Judson Plaintiffs' negligence claim against Greenwalt.

[27] CIS and ASBE contend that (1) Plaintiffs do not have a viable cause of action because it is inherently unreasonable to rely on predictions regarding future tax consequences and (2) Plaintiffs' fraud claims were not pled with sufficient

specificity. Greenwalt argues that the Judson Plaintiffs' (1) negligence claims against them are time-barred, (2) fraud claims were not pled with sufficient specificity, and (3) constructive fraud claim did not allege the necessary unconscionable advantage. Fox & Fox contends that (1) allegations of fraud against it fail to state a claim, (2) fraud claims were not pled with sufficient specificity, (3) the constructive fraud claim was properly dismissed due to a lack of duty, and (4) the negligence claim was properly dismissed pursuant to the economic loss doctrine and for a lack of duty. WTB contends that (1) Washington state law governs its relationships with various Plaintiffs, (2) it had no legal duty to provide tax or financial advice to Plaintiffs, and (3) any claims based on a breach of duty must fail. WRL contends that (1) the Judson Plaintiffs' fraud allegations were not pled with sufficient specificity and (2) the Judson Plaintiffs pled no facts supporting a material misrepresentation. Light contends that all of the Judson Plaintiffs' claims against him fail as a matter of law.

# Discussion and Decision

## *Standard of review*

[28] Plaintiffs are appealing from the grant of several of the Defendants' motions to dismiss filed pursuant to Indiana Trial Rule 12(B)(6). "We review de novo the trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6)." *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1122 (Ind. 2010) (citing *Babes Showclub v. Lair,* 918 N.E.2d 308, 310 (Ind. 2009)).

A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief. *See Kitco, Inc. v. Corp. for Gen. Trade,* 706 N.E.2d 581 (Ind. Ct. App. 1999). Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred.

A court should "accept[] as true the facts alleged in the complaint," *Minks v. Pina,* 709 N.E.2d 379, 381 (Ind. Ct. App. 1999), and should not only "consider the pleadings in the light most favorable to the plaintiff," but also "draw every reasonable inference in favor of [the non-moving] party." *Newman v. Deiter,* 702 N.E.2d 1093, 1097 (Ind. Ct. App. 1998). However, a court need not accept as true "allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading." *Morgan Asset Holding Corp. v. CoBank, ACB,* 736 N.E.2d 1268, 1271 (Ind. Ct. App. 2000) (citations omitted). Indiana Trial Rule 8(A), this state's notice pleading provision, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not set out in precise detail the facts upon which the claim is based, she must still plead the operative facts necessary to set forth an actionable claim. *Miller v. Mem. Hosp. of South Bend, Inc.,* 679 N.E.2d 1329 (Ind. 1997). Under notice pleading, we review the granting of a motion to dismiss for failure to state a claim under a stringent standard, and affirm the trial court's grant of the motion only when it is "apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *McQueen v. Fayette County Sch. Corp.,* 711 N.E.2d 62, 65 (Ind. Ct. App. 1999).

*Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134-35 (Ind. 2006).

Additionally, in the FAC, Plaintiffs made several claims of fraud by various Defendants. Indiana Trial Rule 9(B) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred."

> In order to allege fraud sufficiently, the pleadings must state the time, the place, the substance of the false representations, the facts misrepresented, and identification of what was procured by fraud. *Rogers v. R.J. Reynolds Tobacco Co.* (1990) Ind. App., 557 N.E.2d 1045, 1055, *reh'g denied.* The word "fraud" need not necessarily be alleged, if the facts alleged show either actual or constructive fraud. *Employers Ins. of Wausau v. Commissioner of Dep't of Ins.* (1983) Ind. App., 452 N.E.2d 441, 447. A pleading which fails to comply with the special requirements of T.R. 9(B) does not state a claim upon which relief can be granted or a sufficient defense. *Cunningham v. Associates Capital Serv. Corp.* (1981) Ind. App., 421 N.E.2d 681, 683 n. 2.

*Abbott v. Bates*, 670 N.E.2d 916, 922 n.3 (Ind. Ct. App. 1996).

# I.  Whether Plaintiffs may Maintain Cause of Action Against Defendants for Actual Fraud or Constructive Fraud

Plaintiffs note that the main issues addressed in the FAC are those of actual fraud and constructive fraud. The Plaintiffs contend that they may maintain causes of action against all Defendants for actual fraud and constructive fraud. Various Defendants argue (on various grounds) that Plaintiffs may not maintain causes of action for actual fraud or constructive fraud against any of the Defendants.

# A. Actual Fraud[3]

The elements of actual fraud are: (i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury.

*Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996).

### 1. Whether it Is Unreasonable to Rely on Alleged Predictions of Future Tax Treatment

CIS and ASBE argue that Plaintiffs failed to rebut their argument below that it was inherently unreasonable to rely on any person's prediction of the future tax treatment of a welfare benefits plan. CIS and ASBE rely on *Berry v. Indianapolis Life Insurance Co.*, 600 F. Supp. 2d 805 (N.D. Texas 2009), which held as much. Plaintiffs argue that (1) the Indiana case of *Scott v Bodor, Inc.*, 571 N.E.2d 313 (Ind. Ct. App. 1991), holds that such statements can, in fact support a claim of actual fraud and (2) *Berry* is distinguishable from the instant case in that Defendants made various statements that were not merely predictive in nature.

---

[3] Plaintiffs argue only that the trial court wrongfully dismissed their actual fraud claims against CIS, ASBE, Fox & Fox, WRL, Dybwad, and Light. On appeal, it is the appellants' burden to formulate a cogent argument for the issues they raise. *See* Ind. Appellate Rule 46(A)(8)(a). Because Plaintiffs have not provided a cogent argument that their actual fraud claims against WTB and Greenwalt were wrongfully dismissed, we consider those claims to be abandoned.

### *i*. Berry

[33] In *Berry*, the plaintiffs were, in general, professional individuals and the companies they operated who participated in certain defined-benefit plans that were ostensibly designed and marketed by defendants as being compliant with Title 26, Section 412 of the United States Code. *Berry*, 600 F. Supp. 2d at 807. Various statements were made by defendants to plaintiffs regarding the plans, including that

> 1. The life insurance policies were appropriate for use in funding the plan as a qualified 412(i) plan;
> 2. The life insurance policies provided a permissible death benefit under the plan;
> 3. The premiums to be paid for the policies qualified as federal income tax deductions; and
> 4. The plan and the insurance policies used to fund it complied with all federal tax laws and regulations.
> ….
> 1. That their defined benefit plans would be "a fully insured qualified plan under Section 412(i) of the Internal Revenue Code";
> 2. That each defined benefit plan "satisfies each of the [ ] requirements" of Section 412(i);
> 3. That contributions to the defined benefit plans "are tax deductible to the business, and non-taxable to the participant";
> 4. That each individual plaintiff could eventually "purchase the policy from the plan for its net case value" and "report the policy's net cash value as the taxable income"; and
> 5. That the Consultant Defendants had "secured a letter opinion of 'more likely than not' from the international firm of Bryan Cave LLP" with respect to the viability of this arrangement."

*Id*. at 809, 810. As is happened, by 2005 the IRS began nationwide audits directed at 412(i) plans and had either commenced audits of plaintiffs or was likely to when plaintiffs sued defendants under various theories, including common law fraud. *Id*. at 810.

[34] The *Berry* court granted defendant Indianapolis Life's motion to dismiss on the ground that the plaintiffs failed to plead actual fraud with sufficient particularity. Specifically, the court concluded that plaintiffs failed to allege that various statements regarding the insurance plans at issue were false at the time they were made. *Id.* at 817.

[35] Additionally, the *Berry* court concluded that

> To the extent that Plaintiffs are alleging that any of the statements listed in paragraphs 78 and 86 are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after Dr. Young and Mr. Berry funded their plans with Indianapolis Life insurance policies in 2001-02, the Court finds those opinions as to future events unactionable as the basis for a fraud claim under these circumstances. Each statement allegedly made by Mssrs. West and Hartstein is a statement regarding federal income tax law or policy, including the policies of a third party government agency-the IRS. As a matter of law, any representation or prediction by any alleged Indianapolis Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an unactionable opinion or was unjustifiably relied upon.

*Id.* at 819.

### *ii.* **Scott**

In *Scott*, plaintiff Bodor, Inc., implemented a supplemental income plan presented to it by defendants John Scott and Thomas Brown. 571 N.E.2d at 316. The plan was funded by the purchase of whole life insurance, and Scott and Brown told Bodor employees that Bodor could deduct any contributions to the plan and that funds could be retrieved as needed. *Id.* at 317. At some point, Bodor discovered that the $370,000.00 it had invested in the plan was not, in fact, tax deductible. *Id.* at 318.

We ultimately concluded that "the defendants' representations concerning Bodor's ability to retrieve funds from the plan were representations concerning past or existing facts—the present features or terms of the proposed plan—and not mere statements of opinion or promises of future action." *Id.* at 320. We further stated that

> [h]ere, plaintiff produced evidence that defendants claimed the funds placed in the plan were tax deductible, that the funds were immediately recoverable, and that the plan was not primarily funded by life insurance. *All these statements were misrepresentations as to the features of the plan at the time it was offered to the plaintiff.*

*Id.* at 320-21 (emphasis added).

### *2. Analysis*

CIS and ASBE argue that any representations made regarding the Cronin Plans by any defendant were no more than opinions as to how the IRS might treat the Plans in the future and therefore unactionable pursuant to *Berry*. Plaintiffs

argue that several of the alleged representations are statements regarding present features of the plans pursuant to *Scott*.

[39] In the end, we do not believe *Berry*'s approach to be persuasive enough to convince us to depart from *Scott*'s approach. "[W]hile federal district court decisions may be persuasive, they are not binding authority on state courts." *Plaza Grp. Props., LLC v. Spencer Cnty. Plan Comm'n*, 877 N.E.2d 877, 894 (Ind. Ct. App. 2007), *trans. denied*. While we believe that the *Berry* court's basic reasoning is consistent with relevant Indiana law, we take issue with the court's characterization of some statements as merely predictive when they seem to us to clearly be statements of existing or past fact. For example, statements such as "[t]he premiums to be paid for the policies qualified as federal income tax deductions [and t]he plan and the insurance policies used to fund it complied with all federal tax laws and regulations" cannot be fairly described as predictions; they are, quite simply, statements of purported fact. *Berry*, 600 F. Supp. 2d at 809.

[40] We have little hesitation concluding that our approach in *Scott* is the better-reasoned. From the perspective of the prospective investor, a statement such as "contributions to this plan are tax-deductible" is a statement of fact rather than a prediction regarding how the IRS will treat the plan in the future. With that approach in mind, the following subsections detail the specific allegations made against each Defendant in the FAC as they relate to a claim of actual fraud.

### i. Dybwad

[41] The Kapoor Plaintiffs alleged in the FAC that Dybwad told them in the last quarter of 2006 the following regarding the Cronin ISP Plan: it would provide them with more insurance than they had currently with an additional tax savings, it was IRS-approved and allowed a full tax deduction for contributions, it provided a guaranteed return, and their principal investment would always be protected. These alleged representations all involve statements of past or existing facts which do not involve any predictions about how the IRS would treat the Cronin ISP Plan. In particular, the allegation that Dybwad told the Kapoor Plaintiffs that the Cronin ISP Plan was IRS-approved strongly implies that the IRS evaluated the Cronin ISP Plan and found it compliant. Moreover, allegations that Dybwad claimed that the Cronin ISP was IRS-approved, when he knew that it was not, clearly satisfy the requirement of a false statement of past or existing fact. Under *Scott*, the Kapoor Plaintiffs have made allegations that can support a claim of actual fraud.

### ii. Light

[42] The Judson Plaintiffs alleged in the FAC that Light told them that (1) the Cronin ISP Plan was in total compliance with all IRS regulations, (2) the plan allowed investors to deduct the contribution amount, (3) their principal investment was safe, (4) the plan was a legitimate retirement plan, and (5) they could take tax-free loans from the Cronin ISP Plan at any time. Under *Scott*, all of these alleged statements could support an actual fraud claim. In *Scott*, we found similar statements about an investor's ability to retrieve funds from an

insurance-funded plan to be "representations concerning past or existing facts—the present features or terms of the proposed plan—and not mere statements of opinion or promises of future action." 571 N.E.2d at 320. The Judson Plaintiffs have made allegations against Light that could support a claim of actual fraud.

### iii. WRL

[43] The Judson Plaintiffs allege in the FAC that WRL (1) received marketing materials from Cronin along with documents demonstrating the IRS's unfavorable treatment of welfare benefit plans, (2) paid Cronin and Light commissions on the sale of its life insurance products to the Judson Plaintiffs, (3) knew that Cronin and Light sold its life insurance to fund the Cronin Plans, (4) knew that Cronin and Light used their positions as their clients' trusted advisor to facilitate life insurance sales, and (5) provided Cronin and Light with marketing materials showing how investments in the Cronin Plans were expected to perform. None of the above involves statements made directly to any of the Judson Plaintiffs, which precludes actual fraud claims by the Judson Plaintiffs against WRL.

### iv. Additional allegations against Light, Cronin, and ASBE

[44] The Judson Plaintiffs allege that (1) Light and Cronin advised them to deposit money into an "escrow" account in the event they were able to make future plan contributions; (2) the Judson Plaintiffs deposited a total of $415,510.00 into this account, which was originally held by Arrowhead Trust but was

transferred first to WTB and then ASBE; (3) the Judson Plaintiffs were informed in 2013 by Cronin's widow that the account had a balance of $313,135.00, none of which has been returned to them. None of the above allegations involve statements by the Defendants in question of past or existing fact. Consequently, none of the additional allegations support a claim of actual fraud against Light, Cronin (or CIS), or ASBE.

## B. Constructive Fraud[4]

[45]     Plaintiffs also contend that the trial court erred in dismissing their constructive fraud claims, which, for the most part, are based on the Defendants' alleged failures to disclose the IRS's position on welfare benefit plans involving cash-value insurance policies.

> The elements of constructive fraud are: (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Rice*, 670 N.E.2d at 1284.

---

[4] Plaintiffs contend that the trial court wrongfully dismissed their constructive fraud claims against only WTB, ASBE, Dybwad, Light, CIS, Fox & Fox, and WRL. Because Plaintiffs have not provided a cogent argument that their constructive fraud claims against Greenwalt were wrongfully dismissed, we consider those claims to be abandoned. *See* App. R. 46(A)(8)(a).

[46] "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Budd v. Bd. of Comm'rs of St. Joseph Cnty.*, 216 Ind. 35, 39, 22 N.E.2d 973, 975 (1939). "Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud. An intent to deceive is an essential element of actual fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud." *Daly v. Showers*, 104 Ind. App. 480, 486, 8 N.E.2d 139, 142 (1937).

[47] Moreover, regarding constructive fraud claims,

> It is well-settled that although an oral promise as to future conduct will not support an ordinary fraud action, such promise may form the basis of a constructive fraud action if it induces one to place himself in a worse position than he would have been in had no promise been made and if the party making the promise derives a benefit as a result of the promise.…
>
> ….
>
> The very essence of a constructive fraud action based on the existence of a fiduciary relationship is that one party places a special trust and confidence in a dominant party and, therefore, it is presumed that a transaction entered into during such a relationship is not an arms length transaction, wherein each party would be bound to closely examine the terms of the contract to protect his or her interests rather than relying on a fiduciary's representations.

*Strong v. Jackson*, 777 N.E.2d 1141, 1149 (Ind. Ct. App. 2002), *trans. denied*.

Indiana courts have recognized that a constructive fraud claim may also arise when the relationship between the parties is that of a buyer and seller.

> However, the existence of a fiduciary relationship is not the only basis for a claim of constructive fraud. Rather, our courts have consistently held that a constructive fraud may also arise where the relationship between the parties is that of buyer and seller. *Kirkpatrick v. Reeves* (1889), 121 Ind. 280, 22 N.E. 139; *Scott v. Bodor, Inc.* (1991), Ind. App., 571 N.E.2d 313 (where a seller makes unqualified statements in order to induce another to make a purchase, the buyer relies on those statements, and the seller has professed knowledge of the truth of the statements, a constructive fraud occurs); *Coffey v. Wininger* (1973), 156 Ind. App. 233, 296 N.E.2d 154; *Smart & Perry Ford Sales, Inc. v. Weaver* (1971), 149 Ind. App. 693, 274 N.E.2d 718. The law recognizes that in a buyer-seller relationship one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other. The relationship is therefore one which invokes a duty of good faith and fair dealing.

*Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994) (footnote omitted).

### *1. Duty*

Plaintiffs argue that all Defendants had a duty to disclose material facts to Plaintiffs. Light, CIS, ASBE, WTB, and Fox & Fox argue that Plaintiffs failed to establish that they owed any such duty to Plaintiffs.

> Confidential relationships as a matter of law include fiduciary relationships such as "attorney and client, guardian and ward, principal and agent, pastor and parishioner … [and] parent and child," although this list is not exhaustive. [*Callaway v. Callaway,* 932 N.E.2d 215, 223 (Ind. Ct. App. 2010) (quoting *Carlson v.*

*Warren,* 878 N.E.2d 844, 851 (Ind. Ct. App. 2007))]. In the alternative, a confidential relationship in fact may arise where the facts of a given case "show a relation of trust and confidence justifying one in relying thereon," even where there is no legal presumption of such trust. *Id.* at 223-24 (quoting *Carlson,* 878 N.E.2d at 852). This Court has recognized that, while a "'relationship of trust and confidence' on the particular facts of the case has not been succinctly defined," it exists "'when confidence is reposed by one party in another with resulting superiority and influence exercised by the other.'" *Id.* at 225 (quoting [*Kalwitz v. Estate of Kalwitz,* 822 N.E.2d 274, 281 (Ind. Ct. App. 2005), *trans. denied*]).

*McKibben v. Hughes*, 23 N.E.3d 819, 827 (Ind. Ct. App. 2014), *trans. denied*.

### i. WTB

[50] Plaintiffs contend that WTB had a duty to speak as "trustees" of the Plans. WTB counters that (1) Washington state law governs its relationships with Plaintiffs and (2) the relevant documents limit the duties it owed Plaintiffs. As an initial matter, Plaintiffs argue that WTB has relied upon material that was not included in the pleadings, therefore converting WTB's motion to dismiss into a motion for summary judgment:

> when matters outside the pleadings are submitted in support of a TR. 12 motion for judgment on the pleadings, the motion "shall be treated" as a TR. 56 motion for summary judgment, with or without a motion by a party to that effect. In other words, the TR. 12 motion which is supported by matters outside the pleadings is automatically converted into a motion for summary judgment.

*Tanasijevich's Estate v. City of Hammond*, 383 N.E.2d 1081, 1083 (Ind. Ct. App. 1978).

[51] As WTB notes, the documents on which it bases its argument were attached to the FAC by Plaintiffs. WTB also argues that the documents were central to Plaintiffs' claims. *See Bd. of Comm'rs of Delaware Cty. v. Evans*, 979 N.E.2d 1042, 1046 (Ind. Ct. App. 2012) (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998), for the proposition that "'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his [or her] claim'"). While the documents in question are certainly central to WTB's defense, WTB does not explain, and we do not see, how the attached documents were central to Plaintiffs' claims against WTB. Consequently, we shall treat WTB's Rule 12(B)(6) motion to dismiss Plaintiffs' claims as though it had been a motion for summary judgment.

[52] When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of

the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

"Indiana choice-of-law provisions generally favor contractual stipulations as to governing law." *Kentucky Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010). As WTB points out, both the Kapoor Plaintiffs and Judson Plaintiffs contracted with WTB that Washington state law was to govern all aspects of the relevant trusts and Plans. The Judson Trust Agreement provided, in part, that "[t]his Trust Agreement shall be deemed to be a binding Agreement and shall in all respects be construed and regulated by the laws of the State of Washington except where such laws are superseded by federal laws." Appellant's App. p. 1618. The Kapoor Trust Agreement provided that "[e]xcept to the extent pre-empted by federal law, the provisions of the Plan shall be interpreted in accordance with the Laws of the State of Washington." Appellant's App. p. 1667. Pursuant to the terms of the relevant trust instruments, WTB is correct that claims against it should be evaluated under Washington law.

Under Washington law,

> A trustee's power comes from the express provisions of the trust agreement. *Monroe v. Winn*, 16 Wash. 2d 497, 133 P.2d 952, 956 (1943). The trust document controls even if its terms conflict with statutory obligations. RCW 11.97.010. Where the instrument vests discretion in the trustee, the court will not

interfere with that discretion and only reviews for abuse of that discretion. *Austin v. U.S. Bank of Wash.*, 73 Wash. App. 293, 869 P.2d 404, 410 (1994). A trustee abuses his or her discretion only when they act "arbitrarily, in bad faith, maliciously, or fraudulently." *Id.*

*Vaughn v. Montague*, 924 F. Supp. 2d 1256, 1264 (W.D. Wash. 2013).

[55]   Moreover, as the Washington Supreme Court has stated,

> It is quite possible for the parties expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent. There is in the ordinary case no public policy which prevents the parties from contracting as they see fit, as to whether the plaintiff will undertake the responsibility of looking out for himself.

*Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 758 P.2d 968, 970 (Wash. 1988).

[56]   Both the Judson and Kapoor Trust Agreements, which were attached as exhibits to WTB's motion to dismiss and will therefore be treated as designated evidence, contain the following provisions:

- "The adopting Employer understands and acknowledges that the Trustee is acting solely in the capacity of a nondiscretionary custodian of assets for the adopting Employer to the direction of the Contract Administrator."

- "The Trustee undertakes to only such duties as are specifically set forth in this Trust Agreement and in the Plan, and no implied covenants or obligations shall be read into these documents against the Trustee."

Appellant's App. pp. 1603, 1615, 1630, 1641.

[57] Additionally, the designated fee agreements associated with the Trust Agreements contain the following language: "***IMPORTANT NOTICE: Employer must have all legal, tax and financial aspects of the Plan reviewed by its legal counsel and other professionals. [WTB] does not provide any legal, tax or financial advice or opinions whatsoever concerning this Plan or any aspect thereof.***" Appellant's App. pp. 1621, 1681 (emphases in originals).

[58] "Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it." *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-00 (Ind. Ct. App. 1997). The above provisions clearly absolve WTB of any duty to Plaintiffs to provide tax, legal, or financial advice. Due to the lack of any duty to advise Plaintiffs, entry of judgment in favor of WTB on Plaintiffs' constructive fraud claims is appropriate.

[59] Plaintiffs argue that because they have alleged that they were fraudulently induced to sign the Trust Agreements, we must assume in this procedural context that the Trust Agreements are void and without effect. "Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract." *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 776 (Ind. Ct. App. 2011) (citing *Lightning Litho, Inc. v. Danka Indus., Inc.,* 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002)). "'If a party's manifestation of assent is induced by either a fraudulent or a material

misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.'" *Id*. (quoting RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981)). As subsection § 164(2) and associated comments and illustrations make clear, however, the standard to be applied is different when the misrepresentations are made by one who is not a party to the contract:

> If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the contract is voidable by the recipient, unless the other party to the transaction in good faith and without reason to know of the misrepresentation either gives value or relies materially on the transaction.

*Id*. § 164(2).

[60] Here, whatever the alleged misrepresentations were that might have induced Plaintiffs to sign the Trust Agreements were not made by WTB, as Plaintiffs have not alleged that WTB made any representations to them. In order to fall under subsection § 164(2), Plaintiffs would have had to allege that WTB knew, or had some reason to know, of material misrepresentations to Plaintiffs, which they have not done. Plaintiffs' reliance on the doctrine of fraudulent inducement is unavailing.

### ii. ASBE

[61] Plaintiffs argue that ASBE had a duty to speak to them but failed to do so, thereby subjecting ASBE to a claim of constructive fraud. As alleged, however,

ASBE and Plaintiffs did not have the sort of relationship that would impose a duty to disclose on ASBE. Plaintiffs allege only that ASBE (or its predecessor SATCOM) received money from them and then made payments to various insurance providers for premiums. These facts do not establish a fiduciary duty on ASBE's part. Additionally, there are no allegations that would tend to establish a buyer-seller relationship between Plaintiffs and ASBE. Plaintiffs have failed to allege facts that would support a constructive fraud claim against ASBE.[5]

### iii. Dybwad and Light

[62] Plaintiffs argue that Dybwad and Light owed a duty to Plaintiffs because they were Plaintiffs' fiduciaries. The Kapoor Plaintiffs note that Dybwad had served their financial and insurance needs as far back as 1999, and the Judson Plaintiffs note that Light began advising them in 2002, when he established their 401(k) plan. Light notes that the general rule in Indiana is that "an insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance." *Craven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1296 (Ind. Ct. App. 1992) (citation omitted). "In this state, however, the agent's duty extends to the provision of advice only upon a showing of an intimate long term relationship

---

[5] At oral argument, Plaintiffs claimed that ASBE was an "alter ego" of Cronin. A fair reading of the sections of the FAC cited to by Plaintiffs, however, does not support this assertion.

between the parties or some other special circumstance." *Id.* at 1297. "[S]omething more than the standard insured-insurer relationship is required to create a special relationship obligating the insurer to advise the insured about coverage." *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844, 848 (Ind. Ct. App. 1994), *trans. denied*. "[I]t is the nature of the relationship, not its length, that invokes the duty to advise." *Id.*

[63] The Judson Plaintiffs have alleged that Light was not a mere insurance agent but, rather, their trusted financial advisor, advising them since 2002 and establishing a 401(k) plan. The Judson Plaintiffs also allege that Light sold the Cronin ISP Plan to them much more as an investment vehicle and a way to retain valuable employees than as an insurance product. Given these allegations, we conclude that Light should be treated more as a general financial advisor than an insurance agent.

[64] The question for both Dybwad and Light, then, is whether a financial advisor in their position has a fiduciary relationship with his advisees. "Where a relationship of trust and confidence exists between parties, equity will act to protect it and to prevent the party owing the duty from profiting by its breach." *Peoples Trust Bank v. Braun,* 443 N.E.2d 875, 879 (Ind. Ct. App. 1983).

> Although the existence of a confidential relationship depends upon the facts of each case, it can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Shapiro v. Rubens*, (7th Cir. 1948) 166 F.2d 659. Not only must there be confidence by one party in the

other, the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge. *Koenig v. Leas*, [240 Ind. 449, 165 N.E.2d 134 (1959)]; *Koehler v. Haller*, (1915) 62 Ind. App. 8, 112 N.E. 527. Furthermore, it must be shown that the dominant party wrongfully abused this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage. *Westphal v. Heckman*, (1966) 185 Ind. 88, 113 N.E. 299.

*Hunter v. Hunter*, 152 Ind. App. 365, 372, 283 N.E.2d 775, 779-80 (1972) "Whether such relationship exists is essentially a question of fact." *Paulson v. Centier Bank,* 704 N.E.2d 482, 490 (Ind. Ct. App. 1998), *trans. denied.*

[65] We have little trouble concluding that the allegations in the FAC can support a finding that Light had a fiduciary duty to the Judson Plaintiffs. As their alleged financial advisor, Light would have been in a superior position, and the Judson Plaintiffs might well be expected to have had confidence in his advice regarding the Cronin ISP Plan. We reach the same conclusion about Dybwad's relationship with the Kapoor Plaintiffs. Dybwad had allegedly served the Kapoor Plaintiffs since 1999 as their financial advisor, on whose advice the Kapoor Plaintiffs acted to their detriment. The FAC contains allegations concerning Light and Dybwad that, if true, could support a finding that they had a fiduciary duty to Plaintiffs.

[66] Additionally, as alleged, the Judson Plaintiffs and Light and the Kapoor Plaintiffs and Dybwad had buyer-seller relationships, which could also support claims of constructive fraud. "Our courts previously have held that a constructive fraud may arise in the absence of a confidential relationship where:

1) a seller makes unqualified statements in order to induce another to make a purchase; 2) the buyer relies upon the statements; and 3) the seller has professed to the buyer that he has knowledge of the truth of the statements." *Scott*, 571 N.E.2d at 324. Both Light and Dybwad allegedly made unequivocal statements regarding the Cronin Plans that induced the various Plaintiffs to invest in them. Light's and Dybwad's belief in the knowledge of the truth of those alleged statements was at least strongly implied. We conclude that Plaintiffs have alleged facts that, if true, could support a claim of constructive fraud against Light and Dybwad, on either the theory of breach of fiduciary duty or based on a buyer-seller relationship.

### iv. CIS, Fox & Fox, and WRL

[67]     Plaintiffs argue that CIS, Fox & Fox, and WRL all had a duty to speak because they all proclaimed "special knowledge" regarding the Cronin ISP and GTLP Plans and were selling products and/or services to Plaintiffs. Plaintiffs also argue that they were in a buyer-seller relationship with CIS, Fox & Fox, and WRL, a relationship that can support a constructive fraud claim. Plaintiffs argue that Cronin, by and through CIS, drafted the Plans and prepared all documentation to implement the Plans and also prepared compilation of documents entitled "Legal Resource Guide: Single Employer Welfare Benefit Plans," which included marketing materials, prior IRS notices, revenue rulings, and tax court cases involving welfare benefit plans. Plaintiffs allege that Fox & Fox marketed itself as specializing in serving the employee-benefit needs of the small-to-medium employer, advertised that it offered consulting services related

to all facets of employee benefits, marketed its alleged credentials by claiming that it was staffed with individuals who had worked in all facets of employee-benefit administration, and boasted that it had taken the lead in implementing innovative benefit programs.

[68] Plaintiffs argue that the facts of this case are similar enough to those in *American United Life Insurance Co. v. Douglas*, 808 N.E.2d 690, 693 (Ind. Ct. App. 2004), for that case's holding to apply here. In *Douglas*,

> The plaintiffs were employees of Computer Business Services, Inc. ("CBSI"). In 1994, representatives of CBSI and Edward Miller, who occasionally acted as a broker for [American United Life ("AUL")] annuity and other financial products, met with Michael Schneider, AUL's Manager for Group Sales, about establishing a retirement plan for CBSI employees. CBSI decided to fund a 401(k) plan using an AUL group annuity contract as recommended by AUL. In November 1994, many CBSI employees began directing portions of their salaries to the 401(k) plan.
>
> CBSI's 401(k) plan was terminated in 1997 when the company went bankrupt. AUL distributed the balance of the employees' accounts to them, less an eight percent surrender penalty. The balances were less than employees had anticipated, and in investigating why, they discovered that the 401(k) plan was funded with an insurance product. Peter Douglas, Matthew Douglas, and Sharon Phillips then instituted a proposed class action lawsuit against AUL.

*Id.* at 693.

[69] We affirmed the trial court's denial of AUL's summary judgment motion which AUL based on an alleged lack of duty:

In this case, AUL presented a "Group Retirement Plan Proposed Especially For [CBSI]." The first page of the proposal contains the following heading: "AUL—Retirement Savings Plan Specialists." Appellee's Appendix at 48. The proposal states that "AUL will add value to your retirement savings plan by— Tailoring your retirement savings plan to your needs.…" *Id.* at 49. The proposal notes that "AUL offers a comprehensive range of retirement savings plan services so that you will not have to be a retirement plan expert.… AUL pension consultants meet with prospective plan sponsors to tailor a retirement plan to meet each company's needs and philosophy." *Id.* at 54. Consultants assess "types of contributions that can be used to best achieve the desired plan results." *Id.* AUL held itself out as a "specialist" in retirement savings plans and promised to tailor the plan to the individual needs of the investor by assessing the appropriate types of contributions. We do not have here the kind of affirmative statements made in *Scott,* but this case is based primarily on omissions made by AUL. CBSI representatives have alleged that they relied on AUL's self-proclaimed expertise in choosing a retirement plan and believed that AUL's recommendation was "categorically appropriate for 401(k) plan investing." Affidavit of Andrew Douglas[], Appellee's Appendix at 43. If they had known the true nature of the investment, CBSI representatives would not have funded the plan with a deferred annuity product. *Id.* at 44. AUL has the kind of superior knowledge of the subject which invokes a duty of good faith and fair dealing with the purchaser of its products, including the duty to disclose the nature of the investment especially when it knew that it was selling a product for placement in a 401(k) plan. AUL's argument that it owed no duty to the plaintiffs must therefore fail.

*Douglas*, 808 N.E.2d at 702-03.

[70]    We reach the same conclusion as the *Douglas* court. Plaintiffs have alleged that

Cronin, by and through CIS, prepared and distributed a "Legal Resource

Guide: Single Employer Welfare Benefit Plans" to various agents, including WRL and Fox & Fox. The materials, *inter alia*, stated unequivocally that employer contributions to the Plans designed by Cronin were tax-deductible and provided what was purportedly legal authority for this proposition. Cronin received compensation based on Plaintiffs' participation in his Plans.

[71] Plaintiffs have also alleged that Fox & Fox marketed itself as specializing in serving the employee-benefit needs of the small-to-medium employer, advertised that it offered consulting services related to all facets of employee benefits, marketed its alleged credentials by claiming that it was staffed with individuals who had worked in all facets of employee-benefit administration, and boasted that it had taken the lead in implementing innovative benefit programs. Fox & Fox received compensation for services provided related to Plaintiffs' participation in the Plans.

[72] The Judson Plaintiffs have alleged that WRL reviewed the Cronin Plan documents and the Legal Resource Guide before allowing its policies to be used in the Plans, knew that its agents used positions of trust to facilitate sales of its insurance products, and provided Light and Cronin with materials which were used to explain to the Judson Plaintiffs how their investments would perform.

[73] Plaintiffs have alleged sufficient facts to support a conclusion that CIS, Fox & Fox, and WRL were holding themselves out as experts in the field of employer investment plans, or at the very least strongly implying as such. The marketing materials allegedly prepared by CIS and relied upon by Fox & Fox and WRL

stated unequivocally that Plaintiffs' contributions to the Cronin Plans would be tax-deductible, representations relied upon by Plaintiffs. Plaintiffs have also alleged that CIS, Fox & Fox, and WRL financially benefited from their representations. The facts of this case cannot be distinguished from those of *Douglas*. Plaintiffs may bring constructive fraud claims against CIS, Fox & Fox, and WRL based on their alleged buyer-seller relationships.

## III. Specificity of Pleading Fraud Claims

[74]    CIS and ASBE, Greenwalt, Fox & Fox, WRL, and Light contend that Plaintiffs failed to plead their fraud-based claims against them with sufficient specificity. As previously mentioned,

> Indiana Trial Rule 9(B) states that all averments of fraud must be pled with specificity as to the "circumstances constituting fraud." In order to meet this burden, the party alleging fraud must specifically allege the elements of fraud, the time, place, and substance of false reports, and any facts that were misrepresented, as well as the identity of what was procured by fraud. *Continental Basketball Association, Inc. v. Ellenstein Enterprises,* 669 N.E.2d 134, 138 (Ind. 1996). Failure to comply with the rule's specificity requirements constitutes a failure to state a claim upon which relief may be granted; thus, any pleading which fails to satisfy the requirements fails to raise an issue of material fact. *Cunningham v. Associates Capital Services Corp.,* 421 N.E.2d 681, 683 n.2 (Ind. Ct. App. 1981). These requirements are not limited to common law fraud but extend to all actions that "sound in fraud." *McKinney v. Indiana,* 693 N.E.2d 65, 71 (Ind. 1998).

*Payday Today, Inc. v. Hamilton*, 911 N.E.2d 26, 33-34 (Ind. Ct. App. 2009).

As the United States Court of Appeals for the Seventh Circuit has stated, "[i]t is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th Cir. 2009). The Seventh Circuit has also noted that

> [w]e have read this rule to require "describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). We have noted that the purpose of this particularity requirement is "to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442. We have also cautioned, however, that "the exact level of particularity that is required will necessarily differ based on the facts of the case." *Hofer,* 649 F.3d at 615.
>
> …. [W]hile we require a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, we "remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." [*Pirelli*, 631 F.3d at 443].

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013).

## A. CIS

Plaintiffs alleged in the FAC that Cronin, through CIS, drafted the Plan documents, the adoption agreements, and all other documentation related to the Plans. Cronin also drafted and distributed the "Legal Resource Guide," a

compilation of marketing materials and documents related to prior IRS notices, revenue rulings, and tax court cases. Plaintiffs allege that the materials stated that contributions were tax-deductible and also provided purported legal authority for this proposition. Plaintiffs allege that Cronin distributed the materials with the intent that they would be seen by potential participants in the Cronin Plans and that they contained representations that employer contributions were deductible under the Cronin ISP Plan and created no taxable income for the employee. Plaintiffs also allege that they participated in the Plans based on representations made by CIS and incurred expenses for back taxes, penalties, and interest as a result. Cronin allegedly received compensation based on Plaintiffs' participation in his Plans.

### 1. Actual Fraud

[77] Plaintiffs have not alleged that CIS made any misrepresentations of existing or past fact. In the absence of an alleged misrepresentation, Plaintiffs have not pled an actual fraud claim against CIS, much less pled it with sufficient specificity.

### 2. Constructive Fraud

[78] As previously mentioned, Plaintiffs have made allegations that may sustain a constructive fraud claim against CIS, and we conclude that they pled such a claim with sufficient specificity, detailed enough to support a claim based on a buyer-seller relationship. Plaintiffs have made allegations regarding specific

representations made in marketing materials used by agents to induce them to participate in the Cronin Plans to Plaintiffs' detriment.

## B. ASBE

As previously mentioned, Plaintiffs have not alleged facts sufficient to sustain claims of fraud or constructive fraud against ASBE, much less with sufficient specificity.

## C. Fox & Fox

Plaintiffs have alleged that, as early as 2004, Fox & Fox marketed itself as specializing serving the employee-benefit needs of the small-to-medium employers; offering consulting services related to employee benefits; and administering qualified, non-qualified, and flexible compensation programs for clients across the country. Plaintiffs have alleged that Fox & Fox marketed its credentials on a website by claiming that it was staffed by individuals who have worked in all facets of employee benefits consultation and administration.

### 1. Actual Fraud

Plaintiffs have not alleged that Fox & Fox made any misrepresentations to them directly. Consequently, Plaintiffs have failed to plead an actual fraud claim against Fox & Fox, much less plead it with sufficient specificity.

### 2. Constructive Fraud

We have already concluded that Plaintiffs have alleged facts sufficient to find that Fox & Fox had a seller-buyer relationship with them, one that could

support a constructive fraud claim.  We further conclude that, under the circumstances of this case, the constructive fraud claim against Fox & Fox has been pled with sufficient specificity.  Given the buyer-seller relationship that has been pled, which included marketing materials viewed on a website, it is not surprising that the "when" and "where" of Plaintiffs' constructive fraud claim are not pled with the same specificity that the affirmative misrepresentations in an actual fraud claim would require.

# D.  WRL

[83]  The Judson Plaintiffs allege, essentially, that WRL, who issued the life insurance policies at issue, allowed their agents Light and Cronin to market the Plans.  The Judson Plaintiffs also allege that WRL incurred independent liability to them by reviewing marketing materials and Cronin ISP Plan documents and failing to attempt to correct misrepresentations of Light and Cronin.  The Judson Plaintiffs also allege that WRL provided with Light and Cronin with materials used to explain how their investments would perform.

## 1.  Actual Fraud

[84]  Again, Plaintiffs fail to allege that WRL made any direct misrepresentations to them, meaning that their actual fraud claim has not been sufficiently pled, much less with the required specificity.

## 2.  Constructive Fraud

[85]  As with CIS and Fox & Fox, we conclude that the Judson Plaintiffs have pled constructive fraud based on a buyer-seller with sufficient specificity.  The

Judson Plaintiffs have alleged specifically which documents WRL received from Cronin and reviewed and the specifics of the illustrations WRL provided to Light and Cronin for marketing purposes, illustrations it reasonably would have expected to be seen by prospective purchasers. The Judson Plaintiffs, not being directly involved in these alleged events, can be forgiven for not pleading them with more specificity.

## E. Light

[86]  The Judson Plaintiffs have alleged that Light was not a mere insurance agent but, rather, their trusted financial advisor, advising them since 2002 and establishing a 401(k) plan. The Judson Plaintiffs also allege that Light sold the Cronin ISP Plan to them much more as an investment vehicle and a way to retain valuable employees than as an insurance product.

[87]  The Judson Plaintiffs alleged that Light approached them in October or November of 2004 and made several verbal representations regarding the Cronin ISP Plan including telling them that it was in total compliance with IRS regulations and they could take tax deductions for the amounts of their contributions. Light allegedly touted the Cronin ISP Plan as a legitimate retirement plan and assured the Judson Plaintiffs that their principle investment would always be protected, their investment would grow at a minimum rate of return, and they could access their money through tax-free loans. The Judson Plaintiffs alleged that in reliance on these representations, they invested $30,000.00 in each of 2004, 2005, and 2006, paid $8750.00 in administrative

fees; and made a $90,000.00 payment in December of 2004 to the trustee before WTB.

[88] The Judson Plaintiffs also allege that Light approached them in November of 2006 about amending their Cronin ISP Plan to add an additional $400,000.00 in contributions. Light advised the Judsons that they would need second life insurance policy to amend the Cronin ISP Plan, and the Judsons made a 2006 contribution of $30.000.00 to that end. The Judsons also contributed $310,000.00 to WTB, contributed $60,000.00 to the Cronin ISP Plan in 2007, paid $2075.00 in administrative fees, and took tax deductions for the years 2004 through 2007, as instructed by Cronin and Light.

[89] The Judson Plaintiffs also allege that Light contacted the Judsons in October of 2008 to discuss the Cronin ISP Plan and informed them that they would need to transfer to the Cronin GTLP Plan. Light told the Judsons that the Cronin GTLP Plan was IRS-approved that would still allow them tax deductions for their contributions and would provide a guaranteed return. The Judsons transitioned to the Cronin GTLP Plan; contributed $60,000.00 in 2008, $27,000.00 in 2009, $27,000.00 in 2010, and $27,000.00 in 2011; paid approximately $4625.00 in administrative fees; and took corresponding tax deductions for 2008 through 2010.

### 1. Actual Fraud

[90] The Judson Plaintiffs allege that they were fraudulently induced to execute the Plan documents by Light's representations. The allegations made are

sufficiently specific to satisfy the specificity requirements for pleading actual fraud. Although the Judson Plaintiffs have not alleged ultra-specific times or places for Light's various statements to them, it is worth keeping in mind that some of the alleged statements were made over ten years ago. Under the circumstances, the Judsons can be forgiven for not recalling whether a certain statement was made in their living room or kitchen on October 13 or 15. That said, the Judson Plaintiffs have alleged several specific statements regarding the Cronin ISP and GTLP Plans, which they also allege were false, upon which they relied to their detriment. This is sufficient to satisfy the particularity requirement of Trial Rule 9(B).

### 2. Constructive Fraud

[91] We further conclude that the Judson Plaintiffs have alleged constructive fraud against Light with sufficient specificity. The Judson Plaintiffs have alleged that Light had been their financial advisor since 2002 and had set up their 401(k) plan. We note that the heart of the constructive fraud claim which is based on a fiduciary duty is non-disclosure, which is not an event that can be pled with specificity. It is therefore sufficient simply to plead that the disclosure did not occur.

## F. Dybwad

[92] The Kapoor Plaintiffs alleged that Dybwad approached them in the last quarter of 2006 and told them that the Cronin ISP Plan was IRS-approved, would provide more insurance than they currently had, and would allow a full

deduction for contributions. Dybwad also allegedly told the Kapoor Plaintiffs that the Cronin ISP Plan provided a guaranteed rate of return of 5% to 15%, their principal was protected, the Cronin ISP Plan was a legitimate retirement plan, and they could access their money at any time through tax-free loans. The Kapoor Plaintiffs also alleged that Dybwad later represented that the Cronin GTLP Plan would afford all of the benefits of the ISP Plan. The Kapoor Plaintiffs alleged that as a result of these representations, they invested a total of $600,000.00 in the Cronin ISP and GTLP Plans, taking tax deductions for $500,000.00, and were fraudulently induced into executing the various plan documents.

### 1. Actual Fraud

[93]  As with the Judson Plaintiffs and their allegations against Light, the Kapoor Plaintiffs' allegations are sufficiently specific, given the time elapsed since the alleged misrepresentations were made. The Kapoor Plaintiffs have alleged several specific statements regarding the Cronin ISP and GTLP Plans, which they also allege were false, upon which they relied to their detriment. This is sufficient to satisfy the particularity requirement of Trial Rule 9(B).

### 2. Constructive Fraud

[94]  The Kapoor Plaintiffs allege that Dybwad had served their financial and insurance needs as far back as 1999 and that he was a trusted financial advisor. As we have concluded, these allegations are sufficient to support a finding of a fiduciary duty. Moreover, we conclude that the elements of constructive fraud,

including a duty, have been pled with sufficient specificity. The Kapoor Plaintiffs have pled specific facts that could establish a fiduciary relationship, detrimental reliance on Dybwad's silence, and an advantage gained by Dybwad in the form of commissions.

## III.  Arguments Related to Plaintiffs' Negligence Claims[6]

"In order to prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004), *trans. denied*.

### A.  Whether the Economic Loss Doctrine Bars Plaintiffs' Negligence Claims Against Fox & Fox

Plaintiffs argue that the trial court erred in dismissing their negligence claims against Fox & Fox because the economic loss doctrine has no applicability in this case and therefore does not bar the tort action.  In general,

> the economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law. As noted at the very outset of this *Discussion supra,* the economic loss rule provides that a defendant is not liable under a tort theory for any

---

[6] Although Plaintiffs brought negligence claims against all Defendants, they only present arguments based on the dismissal of their negligence claims against Fox & Fox and Greenwalt. Because Plaintiffs have not provided a cogent argument that their negligence claims against all other Defendants were wrongfully dismissed, we regard the claims abandoned. *See* App. R. 46(A)(8)(a).

purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)—but that a defendant is liable under a tort theory for a plaintiff's losses if a defective product or service causes personal injury or damage to property other than the product or service itself.

*Indpls.-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010).

[97] Plaintiffs rely on *Douglas*, in which the plaintiffs sought recovery from AUL, who sold them an employee-benefit package that underperformed. 808 N.E.2d at 693. Plaintiffs sued, not for losses caused to the purchased product by the product itself, but, rather, for "recovery of their losses due to the alleged misrepresentations or omissions by AUL." *Id*. at 705. We agreed that the economic loss doctrine did not apply, noting that "[t]his is not a case seeking recovery for losses caused to the product by the product [and a]s the trial court found, it is not a 'failure to perform' case." *Id*. at 705.

[98] We agree with Plaintiffs that, pursuant to *Douglas*, the economic loss doctrine does not bar their negligence claim against Fox & Fox. Plaintiffs do not allege that Fox & Fox's alleged negligence caused damage to the product by the product or that Fox & Fox failed to perform, but, rather, that Fox & Fox's alleged negligence resulted in damages in the form of back taxes, penalties, and interest. We conclude that Plaintiffs' negligence claim against Fox & Fox is not barred by the economic loss doctrine. *Id*.

# B. Whether the Accountant Statute of Limitations Bars the Judson Plaintiffs' Negligence Claim Against Greenwalt

Greenwalt contends that Indiana Code section 25-2.1-15-2 bars the Judson Plaintiffs' negligence claim against it. Indiana Code section 25-2.1-15-2, which governs that statute of limitations for claims against accountants, provides as follows:

> An action under this chapter must be commenced by the earlier of the following:
> (1) One (1) year from the date the alleged act, omission, or neglect is discovered or should have been discovered by the exercise of reasonable diligence.
> (2) Three (3) years after the service for which the suit is brought has been performed or the date of the initial issuance of the accountant's report on the financial statements or other information.

## 1. Subsection 1

The Judson Plaintiffs contend that the one-year time period began to run against them when they received their notice of deficiency from the IRS on March 6, 2013. Greenwalt contends that the one-year time period for bringing a negligence suit against it began to run in 2011, when the Judson Plaintiffs received notice that they were being audited.

Greenwalt relies on this court's decision in *KPMG, Peat Marwick, LLP v. Carmel Financial Corp.*, 784 N.E.2d 1057, 1059 (Ind. Ct. App. 2003), for the proposition that the year began to run in 2011, not 2013. In 1997, the plaintiff discovered what both parties agreed was negligent accounting performed in 1996, but did

not file suit until 2001. *Id.* at 1059, 1061. Plaintiff argued that the limitations period did not begin to run until the IRS had made its final determination as to the amount owed, so that plaintiff could plead a specific amount of damages. *Id.* at 1061. We rejected plaintiff's argument, noting that Indiana Code section 25-2.1-15-2 refers to the discovery of the "act, omission or neglect" (both parties agreed that the negligence was discovered in 1997), not the amount of damages or cause of action. *Id.*

[102] *KPMG*, however, does not help Greenwalt. Here, as opposed to *KPMG*, there is no agreement that Greenwalt's alleged negligence was discovered in 2011. The Judson Plaintiffs argue that the allegedly negligent nature of Greenwalt's acts was not clear until the IRS issued its notice of deficiency in March of 2013, a proposition with which we agree. It would be unreasonable to start the clock upon notice of an IRS audit, as many audits, after all, do not result in findings of deficiency. Without a deficiency, there is no tenable lawsuit. To accept Greenwalt's argument on this point would encourage early lawsuits, some—or many—of which would turn out to be premature and meritless. The Judson Plaintiffs' negligence claims against Greenwalt are not barred by subsection 1.

### 2. Subsection 2

[103] Greenwalt contends that any claims by the Judson Plaintiffs relating to conduct occurring before September 13, 2010, are barred by Indiana Code section 25-2.1-15-2(2). The Judson Plaintiffs do not contest this assertion. The Judson plaintiffs may not pursue claims against Greenwalt based on conduct allegedly occurring before September 13, 2010.

# Conclusion

[104] We conclude that the trial court erred in dismissing the following actual fraud claims: (1) the Kapoor Plaintiffs against Dybwad and (2) the Judson Plaintiffs against Light. We conclude that the trial court erred in dismissing the following constructive fraud claims: (1) the Kapoor Plaintiffs against Dybwad, (2) the Judson Plaintiffs against Light, (3) all Plaintiffs against CIS, (4) all Plaintiffs against Fox & Fox, and (5) all Plaintiffs against WRL. The trial court erred in dismissing the following negligence claims: (1) all Plaintiffs against Fox & Fox and (2) the Judson Plaintiffs against Greenwalt. The Judson Plaintiffs, however, may not base a claim of negligence on Greenwalt's part for any conduct occurring before September 13, 2010. We affirm the judgment of the trial court in all other respects. Specifically, we affirm the trail court's dismissal of the following claims: (1) any and all fraud by omission, negligent misrepresentation, unjust enrichment, and money had and received claims brought by any Plaintiffs against any Defendants; (2) all actual fraud claims against CIS, ASBE, Fox & Fox, WRL, WTB, and Greenwalt; (3) all constructive fraud claims against ASBE, WTB, and Greenwalt; and (4) all negligence claims against Dybwad, Light, CIS, ASBE, WRL, and WTB.

[105] We affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings consistent with this opinion.

May, J., and Crone, J., concur.